# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF NORTH CAROLINA

# ASHEVILLE DIVISION

CASE NO. 1:23-CV-270

MACKENZIE ELAINE BROWN

Plaintiff

v.                                                              **EXHIBIT 1**

HENDERSON COUNTY SHERIFF'S

OFFICE, et. al

Defendants

EXHIBIT 1 : FIRST AMENDED COMPLAINT

# UNITED STATES DISTRICT COURT

for the

Western District of North Carolina

Asheville Division

)
MACKENZIE ELAINE BROWN )
_Plaintiff(s)_ )
*(Write the full name of each plaintiff who is filing this complaint.* )
*If the names of all the plaintiffs cannot fit in the space above,* )
*please write "see attached" in the space and attach an additional* )
*page with the full list of names.)* )
-v- )
)
)
HENDERSON COUNTY SHERIFF'S )
OFFICE et al. )
_Defendant(s)_ )
*(Write the full name of each defendant who is being sued. If the* )
*names of all the defendants cannot fit in the space above, please* )
*write "see attached" in the space and attach an additional page* )
*with the full list of names. Do not include addresses here.)* )

Case No. 1:23-CV-270-MR-WCM
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☑Yes ☐No

# FIRST AMENDED
## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Non-Prisoner Complaint)

---

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

# I. JURISDICTION

A. Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."
I am bringing this suit against: State or local officials (a Section 1983 claim).

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983.
The federal constitutional or statutory right(s) that I claim was/is being violated by state or local officials:

1. Deprivation of my First Amendment Constitutional Right to Freedom of Speech – Retaliatory Arrest for Protected Expression of Speech
2. Deprivation of my First Amendment Constitutional Right to Unlawful Seizure – False Arrest Without Probable Cause
3. Deprivation of my Fourth Amendment Constitutional Right – Malicious Prosecution
4. Deprivation of my Fourth Amendment Constitutional Right – Harassment and Intimidation
5. Deprivation of my Fourteenth Amendment Constitutional Right – Procedural Due Process – Abuse of Process
6. Deprivation of my Fourteenth Amendment Constitutional Right – Procedural Due Process – Liberty Interest Claim
7. Deprivation of my Fourteenth Amendment Constitutional Right – Procedural Due Process – Wrongful Conviction Claim
8. Deprivation of my Fourteenth Amendment Constitutional Right – Equal Protection Clause – Class of One Claim
9. Conspiracy to interfere with my civil rights
10. Obstruction of Justice
11. Spoliation of Evidence
12. Deprivation of my North Carolina Constitutional Right – Violation of Victims' Rights – Article 1, Section 37
13. Defamation of Character – Libel
14. Invasion of Privacy – False Light

2.

15. Intentional Infliction of Emotional Distress

## II. PARTIES

### A. The Plaintiff

Name: MACKENZIE ELAINE BROWN
Address: 158 HAVEN RD, EAST FLAT ROCK, NC 28726
HENDERSON COUNTY
Telephone Number: 828-642-0406
E-Mail Address: mackenzieb0897@gmail.com

### B. The Defendant(s)

Defendant No. 1
Name: HENDERSON COUNTY SHERIFF'S OFFICE
Job or Title: LAW ENFORCEMENT AGENCY
Address: 100 N GROVE ST, HENDERSONVILLE, NC 29792
Telephone Number: 828-697-4596
Defendant Henderson County Sheriff's Office acted in concert with the other defendants in the wrongdoing against Plaintiff.
It is sued in its official capacity.

Defendant No. 2
Name: ROBERT JORDAN WARREN
Telephone Number: 828-697-4596
E-Mail Address: jwarren@hendersoncountync.gov
Defendant Robert Jordan Warren was at all times mentioned herein, a sheriff deputy with Henderson County Sheriff's Office.
Defendant WARREN, under color of law by acting in the performance of his official duties as a law enforcement officer with Henderson County Sheriff's Office, willfully subjected Plaintiff Brown to the deprivation of her rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.
He is sued both in his individual and official capacity.

Defendant No. 3

Name: MICHAEL SCOTT LINDSAY
Telephone Number: 828-697-4596
E-Mail Address: mlindsay@hendersoncountync.gov
Defendant Michael Scott Lindsay was at all times mentioned herein, a sheriff deputy with Henderson County Sheriff's Office.
Defendant LINDSAY, under color of law by acting in the performance of his official duties as a law enforcement officer with Henderson County Sheriff's Office, willfully subjected Plaintiff Brown to the deprivation of her rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.
He is sued both in his individual and official capacity.

Defendant No. 4
Name: CRYSTAL D. LANDERS
Telephone Number: 828-694-3105
E-Mail Address: clcapps@hendersoncountync.gov
Defendant Crystal D. Landers was at all times mentioned herein, a sheriff deputy with Henderson County Sheriff's Office.
Defendant LANDERS, under color of law by acting in the performance of her official duties as a law enforcement officer with Henderson County Sheriff's Office, willfully subjected Plaintiff Brown to the deprivation of her rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.
She is sued both in her individual and official capacity.

Defendant No. 5
Name: JOHNNY E. DUNCAN JR.
Telephone Number:
828-694-2785 (OFFICE) | 828-699-3544 (CELL)
E-Mail Address: jduncan@hendersoncountync.gov
Defendant Johnny E. Duncan Jr. was at all times mentioned herein, a Public Information Officer with Henderson County Sheriff's Office.
Defendant DUNCAN, under color of law by acting in the performance of his official duties as a Public Information Officer under Henderson County Sheriff's Office, willfully subjected Plaintiff Brown to the deprivation of her rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

4

He is sued both in his individual and official capacity.

Defendant No. 6
Name: BRADLEY R. REECE
Telephone Number: 828-694-2785
E-Mail Address: breece@hendersoncountync.gov
Defendant Bradley R. Reese was at all times mentioned herein, an Animal
Enforcement Officer with Henderson County Sheriff's Office.
Defendant REESE, under color of law by acting in the performance of his
official duties as an Animal Enforcement Officer with Henderson County
Sheriff's Office, willfully subjected Plaintiff Brown to the deprivation of her
rights, privileges, or immunities secured or protected by the Constitution or
laws of the United States.
He is sued both in his individual and official capacity.

Defendant No. 7
Name: BRITTANY NICOLE MAYBIN
Telephone Number: 828-694-3105
E-Mail Address: bmaybin@hendersoncountync.gov
Defendant Brittany Nicole Maybin was at all times mentioned herein, a
Detention Facility Officer with Henderson County Detention Facility.
Defendant MAYBIN, under color of law by acting in the performance of her
official duties as a Detention Facility Officer with Henderson County Detention
Facility, willfully subjected Plaintiff Brown to the deprivation of her rights,
privileges, or immunities secured or protected by the Constitution or laws of
the United States.
She is sued both in her individual and official capacity.

Defendant No. 8
Name: SUSAN N. OATES
Telephone Number: 828-694-4150
Defendant Susan N. Oates was at all times mentioned herein, a Magistrate with
Henderson County Magistrate's Office.
Defendant OATES, under color of law by acting in the performance of her
official duties as a Magistrate with Henderson County Magistrate's Office,
willfully subjected Plaintiff Brown to the deprivation of her rights, privileges,

or immunities secured or protected by the Constitution or laws of the United States.
She is sued both in her individual and official capacity.

Defendant No. 9
Name: EMILY GREENE COWAN
Telephone Number: 828-694-4225
Address: 743 Old Orchard Dr, Laurel Park, NC 28739
Defendant Emily Greene Cowan was at all times mentioned herein, a District Court Judge at the Henderson County Courthouse.
Defendant COWAN, under color of law by acting in the performance of her official duties as a District Court Judge under the North Carolina Judicial System in the Henderson County Courthouse, willfully subjected Plaintiff Brown to the deprivation of her rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.
She is sued both in her individual and official capacity.

## III. FACTS

On September 26, 2021, I was the pregnant victim in a domestic violence incident while at my house of residence in East Flat Rock, NC. On that day, I was 16 weeks pregnant with the child of Dillion Branch.

Around 8:30 p.m. on that day, Dillion assaulted me by strangling my throat and squeezing my torso to keep me restrained, communicated threats to me by stating, "I'll kill you and the baby inside of you," and "If you show up to my house I'll burn it to the ground with you inside of it," and came towards me with my ax raised like he was about to hit me with it, however I was able to get in my vehicle and drive away before he could. He stole the ax, valued at $80.

About 5 minutes after pulling away from him in my driveway, at 8:55 p.m., I called 911 and reported the incident. I was told by the 911 operator that since I had left the area and I was driving, they would just have a deputy call me to discuss the incident.

A few minutes later, the call came from the unidentified Henderson County officer, who told me that since I had left the area, there was nothing they could do to help me, and then they recommended that I go to the Magistrate's Office and take out assault charges against Dillion in my spare time.

5 days later, on October 1, 2021 around 12 p.m., I showed up to Henderson County Magistrate's Office to file charges against Dillion for the incident. There were 2 people in my vehicle other than me; Dan Pearson and Jennifer

7

Seidman. Prior to arrival, they asked me if they could ride along because Dan needed to go to the Sheriff's Office anyway to inquire about his missing truck.

Since the parking lots to the Magistrate's Office and Sheriff's Office were attached, I parked in the Sheriff's Office parking lot. After parking, I observed a pink sheriff patrol cruiser parked on display. Upon first glance, I noticed at least 5 black Sharpie markers laid out on the trunk of the vehicle. I noticed several indications of signage already made with the Sharpie markers on various parts of the car. I did not closely inspect what any of the signage actually said.

The background story of this is that Henderson County Sheriff's Office (HCSO) were willingly giving the public an open invitation for signage on the pink car as part of their event, even providing the sharpies to write on it with. AdventHealth is who was responsible for funding the event and who paid for the cruiser to be wrapped in the pink film.

Other than those observations, I paid the pink vehicle no mind, and I continued walking to the Magistrate's Office. Once inside, I filled out a criminal complaint form against Dillion with the Magistrate on duty (Defendant SUSAN OATES).

On the form, under "WHAT DID SUSPECT DO?" I wrote, "Assaulted me while I'm pregnant by strangling my throat, squeezing my torso to keep me

restrained, said he wanted to kill me and my baby, said he would burn house with me in it, came towards me with my ax but I drove off before he could hurt me anymore. He stole the ax (worth $80)."

After I finished filling out the form, I took a picture of the completed criminal complaint form with my phone. Then I submitted the sworn written statement to Defendant OATES, and then exited the Magistrate's Office and proceeded to walk back to my vehicle.

I noticed Dan was speaking to a sheriff deputy (Defendant JORDAN WARREN) in front of the Sheriff's Office, so I joined Jennifer where she was standing in front of the pink vehicle. While we were waiting on Dan to finish speaking with Defendant WARREN, I noticed that the conversation between Dan and Defendant WARREN had actually turned into more of an argument than a discussion. Both of them were raising their voices at each other and both had flushed faces and angered expressions.

I turned my attention back to the pink car, where Jennifer was participating in HCSO's event by doodling illustrations on the upper midsection of the pink cruiser with one of the Sharpies that HCSO had laid out. I observed that there were not any rules, regulations, directions, instructions, or clues posted in any way indicating what the public could, could not, should, or should not write.

I wrote "12 SUX" on the upper midsection of the vehicle. All 5 characters took up a space no bigger than the palm of my hand.

9

After Dan was ready to leave, he, Jennifer, and I got in my vehicle and then proceeded to drive to my house.

About 1 hour later around 2 PM, I heard a loud knocking on my back door. Immediately after I opened the door to answer it, the same sheriff deputy that had been arguing with Dan in the HCSO parking lot (Defendant WARREN), plus a female deputy (Defendant CRYSTAL LANDERS), aggressively yanked me out of my doorway.

I told them, "Take it easy, I am pregnant!" and although they did slightly ease up their grip on my arms, Defendant LANDERS still forced me into handcuffs behind my back, doing so with an unnecessary amount of physical force. Defendants WARREN and LANDERS started accusing me of resisting arrest even though I was very calm, submissive, and polite to them the entire time.

None of the officers would tell me why I was being handcuffed and they would not explain to me what they were arresting me for, even though I kept repetitively asking them questions such as: "Why am I being handcuffed?" and "Am I being arrested?" and "What laws have I broken?"

In regards to any officers involved other than Defendant WARREN and Defendant LANDERS, during the process of Henderson County Sheriffs' Office arresting me in my driveway, I do remember seeing several other officers standing around, but those officers were basically just observing Defendant

10

WARREN and Defendant LANDERS the entire time, rather than assisting them with the unlawful arrest.

They would not allow me to shut or lock my door behind me. I asked them if they would pull it shut themselves if they weren't going to let me do it and they eventually did. I was silent as they escorted me to the front of my house where I saw 4 to 6 sheriff cars in or around my driveway, including the pink vehicle. Not until then did I finally realize why they were there, and even then, I was very confused trying to understand why I was being arrested when I hadn't broken any laws.

Then both Defendants WARREN and LANDERS verbally abused me and/or chastised me for several minutes, calling me things such as "a piece of shit."

Defendant WARREN took pictures of me standing handcuffed in front of the pink sheriff car with an embarrassed look on my face.

Then Defendant LANDERS shut me inside the vehicle and drove me to Henderson County Detention Facility in the back of the pink cruiser, in an effort to humiliate and shame me.

Upon arrival at Henderson County Detention Facility, after I was let out of the vehicle, Deputy LANDERS and a Detention Facility Officer (Defendant BRITTANY MAYBIN) stood with me facing the vehicle, telling me things such as, "You should feel bad about yourself for this." Defendant MAYBIN told me,

"The entire car part is going to have to be completely replaced because of what you wrote." That is a judgment outside of her professional expertise to make.

Defendant MAYBIN patted me down and then escorted me to the booking area, where I was able to have my wrists uncuffed from behind my back, which was giving me concerns because of my pregnancy, and the handcuffs were moved to my frontside.

Next I was served with a Warrant for Arrest, issued by the Magistrate (Defendant OATES) for Injury to Personal Property, with a secured bond of $2,000. OATES was the same Magistrate on duty several hours prior, when I had come to file assault charges against Dillion. It had not been mentioned by any of the officers present during the arrest in my driveway that there was any kind of warrant for my arrest.

The Warrant for Arrest stated that I "unlawfully and willfully did wantonly injure personal property, HENDERSON COUNTY SHERIFF'S OFFICE PATROL VEHICLE, CAR NUMBER SH 208, the property of HENDERSON COUNTY SHERIFF'S OFFICE. The damage caused was in excess of $200."

The warrant contains deliberate false statements, such as, "unlawfully and willfully did wantonly injure personal property," because HCSO was willingly giving the public an open invitation for signage on the pink patrol car as part of their event, but I was the only person to get arrested, due to their viewpoint-based discrimination of my protected expression of speech.

Another false statement in the warrant is, "The damage caused was in excess of $200," because the vehicle was a regular Sheriff car that was wrapped in pink film that can be peeled off, and AdventHealth is who was responsible for funding the event and who paid for the car to be wrapped, rather than HCSO. It was also revealed later on that the car part was never actually replaced, but instead was covered with vinyl screening in that one area.

The warrant also deliberately omits relevant information that, if added, would negate probable cause for arrest and deteriorate the validity of the allegations, such as that HCSO was willingly giving the entire public community an open invitation for signage on the pink car as part of their event, even providing the sharpies to write on it with, with no rules, regulations, instructions, or directions as to what could or could not be written, and that I never vandalized or damaged the vehicle whatsoever, but rather only participated in HCSO's event.

I was photographed, fingerprinted, and moved to a solitary cell. I used the phone in the cell to contact Dan Pearson to find a bail bondsman for me, and not long after that, Defendant MAYBIN told me that a bondsman was on the way for me.

However, about 30 minutes later, when she was doing rounds again, Defendant MAYBIN said to me, "You might have to stay the entire weekend

13

because no bondsman is willing to come get you anymore." When I asked her, "Why not?" Defendant MAYBIN replied, "Because we told them what you wrote and they respect us so they don't want to come get you now." I responded, "Are you guys even allowed to do that?" But Defendant MAYBIN didn't respond to me, and then walked away.

There was personal interest being taken by Defendant MAYBIN to intentionally persuade several bond companies to deny my release through their agencies. I witnessed her either answer the phone herself or direct another unknown officer to answer the phone, once my friend had the bond companies calling the jail to inquire about releasing me, and persuading/coercing them to refuse to bond me out.

Eventually, at 8:20 p.m., I was able to find a bail agent to assist me, and I was released from custody after posting a $2,000 bond.

In the meantime on that same day, at 5:40 p.m., the HCSO's Public Information Officer (Defendant JOHNNY E. DUNCAN JR.) made a post on HCSO's Facebook page humiliating and defaming me in a false light about the arrest. The Facebook post had the pictures that Defendant WARREN took of me earlier that day, standing handcuffed in front of the pink vehicle.

The post read: "Now hear this !! This morning the Henderson County Sheriff's Office along with AdventHealth unveiled a pink patrol car for Breast Cancer Awareness Month. The intention of this car was to honor and recognize

those individuals who have fought or are currently fighting Breast Cancer. Several hours after unveiling this car Mackenzie Elaine Brown 24 years of age from East Flat Rock decided it would be a good idea to show her respect by coming to the Sheriff's Office and vandalizing this tribute car. Mackenzie didn't put too much thought into her actions or she would have known the Law Enforcement Center is under 24/7 video surveillance. Within less than an hour our officers had identified her and obtained a warrant for her arrest. Seeing how Mackenzie is such a supporter of our pink patrol car we decided to allow her to be the first person to ride in the back seat of it and we also gave her a complimentary stay in the ole gray bar hotel. Mackenzie has been charged with Injury to Personal Property and her bond was set at $2,000.00 secured. #PlayStupidGamesWinStupid Prizes #OurSheriffDoesntPlay #NotInHendersonCounty #DontDisrespectThoseWhoHaveFoughtBreast Cancer #EnjoyYourVisitBackToJail"

Defendant DUNCAN's post contained a misled portrayal of me disrespecting breast cancer. Nowhere in the post did Defendant DUNCAN state what I actually wrote ("12 SUX"), or that HCSO was willingly giving the public the open invitation to sign the vehicle. Within one day of my arrest, 20 different other online entities scraped the data from HCSO's falsely portrayed Facebook post and republished the story, along with my personal information and arrest details. That caused the misled portrayal of the incident to become highly

15

publicized on a national level, totaling 21 sources (unless there are more I'm unaware of) that link to the incident.

There were 3 attempts by my family and friends to have the Facebook post removed but their requests were ignored.

The next morning, on October 2, 2021 around 9 AM, there was a paper taped to my door with a fine of $550 by Henderson County Sheriff's Office Animal Enforcement Division, who had showed up to my home and did an extremely random and unexpected dangerous dog inspection while I was asleep. Defendant BRADLEY REECE was the Animal Enforcement Officer responsible for issuing the violation.

A couple of weeks later, I made a phone call to Animal Enforcement, explaining to them that I was unable to afford the $550 fine and I asked if there was any way to have the violation removed. I explained to them that it wasn't the fact that I didn't want to answer the door for them, it was the fact that I genuinely did not hear them knocking to begin with. I explained to them the relevant factors, such as that the AC unit in my bedroom was turned on high which blocks out any noise outside of my bedroom. They would have been knocking from the door at the complete opposite end of my residence. It was early morning and I was still asleep. I was 17 weeks pregnant at that time and I slept so much when I was pregnant. I was exhausted mentally from the totality of the previous day. I told them that a $550 fine seems like such an extreme

measure to resort to just for someone not answering their door because they are asleep, and that a "Warning" instead of a "Citation Violation" would have been much more reasonable. The officer's response was, "We can take away the $550 charge, but we'll have to mark that as your dog's strike 2, and on strike 3, we'll have to put her down."

On March 24, 2022, there was a 'trial by judge' hearing at Henderson County Courthouse on the INJURY TO PERSONAL PROPERTY matter with Defendant EMILY COWAN presiding as the District Court Judge.

During that court appearance, Deputies Jordan Warren and Scott Lindsay (Defendants WARREN and LINDSAY) gave testimonials on the witness stand. While answering the questions that my Public Defender, Dennis Maxwell, was asking Defendants WARREN and LINDSAY, it was acknowledged by both of them that HCSO was allowing the entire public community to add signage onto the pink vehicle for their event that day, and that there were no rules or regulations as to what could or could not be written on it.

The order of events on the day of October 1, 2021 according to Defendants WARREN and LINDSAY were as follows: Around 12:30 PM, Defendant WARREN arrived at Henderson County Sheriff's Office in response to Dan Pearson's (one of the two people that were with me when I had come to the Magistrate's Office that day) truck being missing and saw an SUV parked in the parking lot. Defendant LINDSAY was working at the "front desk," although I am unsure if

that meant at the Sheriff's Office or at the Detention Facility. Defendant WARREN and Dan Pearson had a discussion about Dan's missing truck while standing on the sidewalk outside of the Sheriff's Office. Once Defendant WARREN and Dan had finished their conversation and Dan had left the premises, Defendant WARREN discovered the "12 SUX" signage on the pink vehicle. He immediately went to review the camera footage and linked the person who signed "12 SUX" to the owner of the SUV, then ran the tag of the SUV to see that the owner was Mackenzie Brown (myself). Then they "tried to apply for criminal process." They were "able to take out a warrant on Mackenzie Brown for INJURY TO PERSONAL PROPERTY." Then they took pictures of the "12 SUX" signage. Then they "attempted to remove it and were unable to." They "had to use a piece of vinyl covering to conceal the spot on the car."

My Public Defender entered a "Not Guilty" plea for the Injury to Personal Property charge, on the grounds that my First Amendment rights had been violated because my signage was Constitutionally protected.

However, Defendant COWAN failed to follow procedural due process by demonstrating bias and favoritism towards the deputies, ignoring all of the facts that made it obvious I was innocent of the alleged crime, and wrongfully convicting me anyway. I immediately appealed the conviction to Henderson County Superior Court.

18

In April of 2022, approximately 7 months after my October 1st visit to the Magistrate's Office when I had come to file the charges against Dillion, I returned to the Magistrate's Office to inquire about the status of the matter.

I was told by on-duty Magistrate Monica Jernigan, that the criminal complaint form I had filled out on October 1st, 2021, "was never filed," and that she was unable to locate any record related to the assault charges against Dillion whatsoever.

I pulled the picture up on my phone I had taken of the form right before I had submitted it to Defendant OATES that day, and I showed Magistrate Jernigan the picture. She told me she didn't understand why she couldn't find any record whatsoever of the form itself or any charges filed against Dillion for the assault. She told me a copy of the form should have still been preserved in the system regardless of whether or not any warrants were issued or not.

I told Magistrate Jernigan, "I had come here (to the Magistrates Office) and filled out the form right before I was falsely arrested for Injury to Personal Property (the incident involving me being arrested for the "12 SUX" signage). OATES was the same Magistrate who I filed the assault charges against Dillion with, and who served me my warrant for arrest for Injury to Personal Property later that day."

Magistrate Jernigan informed me that Magistrate SUSAN N. OATES would have been "unable to process the Injury to Personal Property arrest on the

19

same day that I filed assault charges against my abuser." Magistrate Jernigan and I reached the conclusion that Defendant OATES intentionally did not issue any criminal charges against Dillion, and had destroyed any evidence of the complainant form I had submitted.

Magistrate Jernigan instructed me to come back when Defendant OATES would be on duty so that I could come back on that day to speak with her and see if I could figure out where that form went.

So on May 26, 2022, I went to Henderson County Magistrate's Office to speak to Defendant OATES, as Magistrate Jernigan recommended. I inquired about where the assault case against Dillion stood.

My words to Defendant OATES were, "You were the Magistrate who was working the day I came here to take out assault charges against Dillion Branch, back in October, for violently attacking me and strangling me while I was 16 weeks pregnant with his baby. I searched his name recently on the NC Courts website to see if maybe he had a court date for the assault case yet, since it's been almost 8 months now, but no such court date came up. Yet, he has a new court date for SPEEDING. Which brings me to my question for you... If Dillion was pulled over for speeding, that typically means his name would have been run. When his name was run, the officer should have seen the warrant for assault and served him, plus most likely arrested him too. Do you know why Dillion wasn't served or arrested at that time?"

Defendant OATES did not give me a direct answer. She began to seem very panicked, uncomfortable, dismissive, and evasive as the recognition set in of the particular day I was referring to. I asked to see a copy of the original complaint form, but as expected, Defendant OATES was unable to locate it. Defendant OATES demanded that I come back when the next Magistrate was working once her shift ended and that I could speak to them, and then she told me that I needed to leave. Although her tone was very high-pitched and hostile during the entire interaction, I spoke in a calm and polite tone the entire time, with genuine concern for the whereabouts of the form that had disappeared under her supervision.

On September 3rd, 2022, I returned to the Magistrate's Office and made a second attempt to file criminal charges against Dillion regarding the assault incident, this time with on-duty Magistrate Jernigan. I filled the same exact information I had written on the original form onto the new form, other than under the "WHAT DID SUSPECT DO?" section, because Magistrate Jernigan filled in that part herself. She wrote, "Picked her up by the throat, pushed her up at throat, hands at neck and squeezed." Then I submitted the sworn written statement to Magistrate Jernigan.

By the next day, on September 4th, 2022, Dillion had been served with a subpoena to appear in Henderson County court for ASSAULT ON A FEMALE. I was issued a subpoena to appear as the victim in the case. Although there

21

should have been a Battery of an Unborn Child charge, a Misdemeanor Larceny charge, and a Communicating Threats charge accompanied, it was better than nothing. However, on August 2, 2023, the ASSAULT ON A FEMALE case was disposed of because Dillion was deemed deceased, before I ever got the chance to be given justice for his criminal acts against me and his child I was pregnant with during the assault incident.

Rewinding back to September 19, 2022, during a court appearance on the Injury to Personal Property matter, the prosecution party used intimidation tactics to attempt to coerce me into accepting a deal that would have implied me being guilty in the matter. My Public Defender told me the District Attorney Andrew Murray wanted to "...offer you a deal where they'll dismiss the charge if you write an apology letter to the county and do some volunteer hours." I refused. The second offer was that, "You wouldn't have to do any volunteer hours but you would still have to write the apology letter to the county." Again, I refused. Then, my Public Defender told me that "The prosecution party might try to use you being a couple minutes late against you," in effort to add to their intimidation tactics.

Eventually, the case was continued and my Public Defender told me that at that next court date, my case was going to be heard in front of a trial jury. A trial date was set for November 7, 2022.

22

But it never was, because on October 25, 2022, the IPP charge against me was dismissed by District Attorney Andrew Murray for the reason of NISITP – Not In The States Interest To Prosecute.

23

## IV. CLAIMS

**FIRST CLAIM**
42 U.S.C. Section 1983
Deprivation of a Federal Right – Violation of First Amendment – Freedom of
Speech – Retaliation
Against All Defendants

Defendants WARREN and LINDSAY were both involved in the initiation of false
criminal charges against Plaintiff for Injury to Personal Property, as a direct
result of them taking offense to her "12 SUX" signage, so therefore their
adverse actions demonstrate retaliation of Plaintiff's First Amendment
protected speech.

Defendant LANDERS was involved in arresting Plaintiff for her signage and
drove her to jail in the back of the pink sheriff car with intent to shame her, as
a direct result of her taking offense to Plaintiff's "12 SUX" signage, so
therefore Defendant LANDERS' adverse actions demonstrate retaliation of
Plaintiff's First Amendment protected speech.

Defendant MAYBIN interfered with Plaintiff's release from Henderson County
Detention Facility by using intimidation tactics to persuasively coerce bail
agencies to not assist Plaintiff in her process of bonding out of jail, as a direct
result of her taking offense to Plaintiff's "12 SUX" signage, so therefore
Defendant MAYBIN's adverse actions demonstrate retaliation of Plaintiff's
First Amendment protected speech.

Defendant DUNCAN wrote a post on HCSO's Facebook page that contained
inaccurate, defamatory, and humiliating statements against Plaintiff in a false
portrayal of her arrest, as a direct result of him taking offense to Plaintiff's "12
SUX" signage, so therefore Defendant DUNCAN's adverse actions demonstrate
retaliation of Plaintiff's First Amendment protected speech.

Defendant REECE issued Plaintiff an unnecessary punishment when he fined
her $550 the morning after the arrest for simply not answering her door, as a
direct result of him taking offense to Plaintiff's "12 SUX" signage, so therefore

Defendant REECE's adverse actions demonstrate retaliation of Plaintiff's First Amendment protected speech.

Defendant OATES was involved in the initiation of false criminal charges against Plaintiff for Injury to Personal Property, plus destroyed evidence in Plaintiff's domestic violence matter in which Plaintiff was a victim in, as a direct result of her taking offense to Plaintiff's "12 SUX" signage, so therefore Defendant OATES' adverse actions demonstrate retaliation of Plaintiff's First Amendment protected speech.

Defendant COWAN wrongfully convicted Plaintiff of Injury to Personal Property while ignoring facts that made it obvious Plaintiff was innocent of the alleged crime, as a direct result of her taking offense to Plaintiff's "12 SUX" signage, so therefore Defendant COWAN's adverse actions demonstrate retaliation of Plaintiff's First Amendment protected speech.

Plaintiff's "12 SUX" signage was protected by the First Amendment of the U.S. Constitution because her speech was made at a point in time where citizen comments were solicited on the vehicle by Henderson County Sheriff's Office, she made her speech as a citizen of Henderson County, and her speech addressed a "public concern".

Every other person that was similarly situated in Plaintiff's position by being a citizen to participate in HCSO's event by adding signage to the vehicle was not arrested. Plaintiff was the only person singled out and targeted for her signage.

Plaintiff was unlawfully arrested pursuant to an invalid warrant for Injury to Personal Property. The warrant was based upon false information and unsupported by probable cause.

If the particular conduct of Plaintiff was erroneously believed to be criminal when in fact it was not, the presence of probable cause to believe Plaintiff had committed that conduct would not provide probable cause to arrest. So therefore, there was not probable cause for any officer/official to believe, based on the facts known at the time of arrest, that Plaintiff committed, was committing, or was about to commit a crime.

When each Defendant used viewpoint discrimination and content-based regulation to retaliate against Plaintiff for her expression of speech, they diminished her ability to express her harmless thoughts and ideas freely, and prevented any subsequent speech that might have been broadcast, especially in regards to commentation towards law enforcement.

As a result, it has created an ongoing chilling effect for Plaintiff, causing fear to exercise her free speech rights where there wasn't that fear before, so therefore the Defendant's have directly harmed Plaintiff's ability to communicate constitutionally protected speech.

Defendant Henderson County Sheriff's Office acted in concert with the other defendants in the wrongdoing against Plaintiff, therefore the liability is imputed to them also.

**SECOND CLAIM**
42 U.S.C. Section 1983
Deprivation of a Federal Right - Violation of Fourth Amendment - Unlawful Seizure - False Arrest
Against Defendants WARREN, LINDSAY, OATES, and HENDERSON COUNTY SHERIFF'S OFFICE

On October 1st, 2021, Defendant OATES co-conspired with Defendants WARREN and LINDSAY to seek, issue, and serve a Warrant for Arrest for Plaintiff, alleging the criminal offense of "INJURY TO PERSONAL PROPERTY", while they each knew the warrant affidavit contained false statements, omitted relevant information, and was unsupported by probable cause. The Defendant's made the false statements and omissions deliberately, unreasonably, and with a reckless disregard for the truth.

The Warrant for Arrest was charged under N.C.G.S. 14-160, in Henderson County Criminal file no. 21CR053859. It stated that Plaintiff "unlawfully and willfully did wantonly injure personal property, HENDERSON COUNTY SHERIFF'S OFFICE PATROL VEHICLE, CAR NUMBER SH 208, the property of HENDERSON COUNTY SHERIFF'S OFFICE. The damage caused was in excess of $200."

To determine whether any misstatements or omissions were material, the Court can subtract the misstatements from the warrant affidavit, and add the facts that were omitted, and then determine whether the warrant affidavit, with these corrections, would establish probable cause.

The statement, "unlawfully and willfully did wantonly injure personal property," is false because HCSO was willingly giving the entire public community an open invitation for signage on the pink patrol car as part of their event, and because they didn't agree with Plaintiff's signage, she was the only person to get arrested.

The statement, "The damage caused was in excess of $200," is a false statement because the vehicle was a regular Sheriff car that was wrapped in pink film that can be peeled off, and AdventHealth is who was responsible for funding the event and who paid for the car to be wrapped, rather than HCSO. It was also revealed later on that the car part was never actually replaced, but instead was covered with vinyl screening in that one area.

When subtracting the misstatements, and then adding the facts that were omitted, such as that Plaintiff never vandalized or damaged the vehicle whatsoever, but rather only participated in HCSO's event, it becomes evident that with those corrections, the warrant affidavit would not have established probable cause to arrest Plaintiff.

By Defendants WARREN and LANDERS arriving at Plaintiff's home to arrest her, and immediately and aggressively handcuffing her without explaining to her why despite her several attempts to ask them, ignoring her questions asking them why she was being arrested when she had not broken any laws, and accusing her of resisting arrest despite her being very submissive and calm to them, their actions demonstrate an unreasonable seizure of her person, which is a violation of her Fourth Amendment rights.

Defendant Henderson County Sheriff's Office acted in concert with the other defendants in the wrongdoing against Plaintiff, therefore the liability is imputed to them also.

**THIRD CLAIM**

42 U.S.C. Section 1983
Deprivation of a Federal Right – Violation of Fourth Amendment – Malicious Prosecution
Against Defendants WARREN, LINDSAY, OATES, and HENDERSON COUNTY SHERIFF'S OFFICE

Defendants WARREN, LINDSAY, and OATES initiated a criminal proceeding against Plaintiff without probable cause for Injury to Personal Property. They did so by furnishing false information or concealing material information to prosecuting authorities.

The Defendants did so with malicious intent to retaliate against Plaintiff, as a result of them taking offense to Plaintiff's "12 SUX" signage.

As a consequence of the proceeding, Plaintiff has suffered a deprivation of liberty consistent with the concept of the seizure.

The criminal proceeding regarding the Injury to Personal Property charge was eventually dismissed in favor of Plaintiff on October 25, 2022, for the reason of NISITP (Not In States Interest To Prosecute).

Defendant Henderson County Sheriff's Office acted in concert with the other defendants in the wrongdoing against Plaintiff, therefore the liability is imputed to them also.

**FOURTH CLAIM**
42 U.S.C. Section 1983
Deprivation of a Federal Right – Violation of Fourth Amendment – Harassment and Intimidation
Against All Defendants

Each and every Defendant demonstrated a pattern of harassing and intimidating actions towards Plaintiff by engaging in a course of conduct that served no legitimate purpose and caused Plaintiff fear, apprehension, and substantial emotional distress.

28

The Defendants' acts consist of extreme, outrageous, and bullying conduct, and their actions were motivated by spite, evil motive or intent, or involved reckless or callous indifference for Plaintiff's rights.

Defendants Warren and Landers harassed Plaintiff by taking pictures of her standing handcuffed in front of the pink sheriff car without her permission, both of them insulted her by calling her things such as "a piece of shit," and then drove her to jail in the back of the pink vehicle in effort to humiliate and punish her.

During the arrest of Plaintiff in her driveway, there were not just Officers Warren and Landers there at the scene, but in fact several other Henderson County deputies as well. Yet all the other officers were basically just observing Defendants WARREN and LANDERS the entire time, rather than assisting them with the unlawful arrest. That being said, Defendants WARREN and LANDERS went out of their way to act in harassing and intimidating ways towards Plaintiff.

Upon arrival at Henderson County Detention Facility, Defendants LANDERS and MAYBIN insulted Plaintiff by telling her things such as "You should feel bad about yourself for this."

Defendant MAYBIN took personal interest to impede Plaintiff's release from jail. Defendant MAYBIN did this by personally answering the phone or directing another unknown officer to answer it, once multiple bail agencies were calling the jail about Plaintiff's release, and Defendant MAYBIN coercing and/or persuading them to deny assisting Plaintiff with her release through their agencies.

Defendant DUNCAN made defamatory, derogatory, and humiliating statements about Plaintiff, by publicizing a false portrayal of her arrest on the HCSO Facebook page and the HCSO mobile app, in a context to humiliate and shame her, while he purposefully omitted important facts in the posts, such as how HCSO was willingly giving the public an open invitation to sign the vehicle.

Defendant REECE harassed Plaintiff by issuing her a $550 fine for not answering her door for an extremely random and unexpected dangerous dog inspection on October 2, 2021. The harassment is evident when taking into consideration the temporal proximity between Plaintiff's false arrest and REECE issuing her the $550 fine (less than 24 hours apart). When Henderson County Animal Enforcement used an ultimatum over Plaintiff's head to either one, deem her dog one step closer to being euthanized by them, or two, submit to them monetarily by paying them the $550 fine, Defendants REECE and HCSO have induced extreme fear in Plaintiff of Animal Enforcement murdering her dog where there wasn't that fear beforehand.

Defendant Henderson County Sheriff's Office acted in concert with the other defendants in the wrongdoing against Plaintiff, therefore the liability is imputed to them also.

**FIFTH CLAIM**
42 U.S.C. Section 1983
Deprivation of a Federal Right – Violation of Fourteenth Amendment – Procedural Due Process – Abuse of Process
Against Defendants WARREN, LINDSAY, LANDERS, OATES, and HENDERSON COUNTY SHERIFF'S OFFICE

On the day of October 1, 2021, Magistrate OATES, as well as Deputies WARREN, LINDSAY, and LANDERS, each had knowledge that HCSO was allowing the entire public community to add signage with the Sharpies onto the pink patrol car as part of their event.

Following Deputies WARREN and LINDSAY's discovery of Plaintiff's "12 SUX" signage on the pink vehicle, the two of them went to Magistrate OATES to seek a criminal process against Plaintiff, alleging the criminal offense of "INJURY TO PERSONAL PROPERTY."

Magistrate OATES authorized the warrant for Plaintiff's arrest, while she was well aware of the scope of the inaccuracies and deficiencies in the warrant she authorized.

Defendants WARREN, LINDSAY, and LANDERS used that Warrant for Arrest, which was created with lack of factual ground and based upon false information, to arrest Plaintiff at her house, while they each knew that Plaintiff did not commit the alleged crime, and they each did so in effort to use the criminal process to undermine legal proceedings and the justice system.

Defendants WARREN, LINDSAY, LANDERS, and OATES are all guilty of abuse of process, because they each deliberately and maliciously misused the criminal court process with ulterior motive, by effecting a Warrant for Plaintiff's arrest with intent to retaliate against Plaintiff because they took offense to her protected expression of speech.

Defendant Henderson County Sheriff's Office acted in concert with the other defendants in the wrongdoing against Plaintiff, therefore the liability is imputed to them also.

**SIXTH CLAIM**
42 U.S.C. Section 1983
Deprivation of a Federal Right – Violation of Fourteenth Amendment –
Procedural Due Process –
Liberty Interest Claim
Against Defendants WARREN, LINDSAY, LANDERS, REECE, MAYBIN, OATES, and HENDERSON COUNTY SHERIFF'S OFFICE

Plaintiff has a liberty interest of not only the right to be free from unjust incarceration, but her right as a United States citizen in the enjoyment of all her faculties and to be free to use them in all lawful ways.

Defendants WARREN, LINDSAY, LANDERS, and OATES violated Plaintiff's right to freedom from incarceration by taking actions to initiate her confinement to jail while knowing Plaintiff was innocent of the alleged crime.

Defendant MAYBIN deprived Plaintiff of her liberty rights by using intimidation tactics to coerce surety companies to refuse to assist Plaintiff in her process of bonding out of jail, which prolonged the lapse of time that Plaintiff was held in custody unlawfully.

Defendant REECE deprived Plaintiff of her right to not be deprived of life, liberty, or property without due process of law. Animals are considered property in all legal jurisdictions today. He did this by using an ultimatum over Plaintiff's head to either one, deem her dog one step closer to being euthanized by them, or two, submit to them monetarily by paying them a $550 fine, which jeopardized erroneous deprivation of her animal.

The procedures used by the Defendants to deprive Plaintiff of her procedural due process and liberty rights were not constitutionally adequate.

Defendant Henderson County Sheriff's Office acted in concert with the other defendants in the wrongdoing against Plaintiff, therefore the liability is imputed to them also.

**SEVENTH CLAIM**
42 U.S.C. Section 1983
Deprivation of a Federal Right – Violation of Fourteenth Amendment – Procedural Due Process – Wrongful Conviction Claim
Against Defendant COWAN

During the 'trial by judge' hearing for the Injury to Personal Property charge on the day of March 24, 2022, the District Court Judge, Defendant COWAN, failed to follow procedural due process by ignoring facts that made it obvious Plaintiff was innocent of the alleged crime and maliciously convicting her anyway.

Defendant COWAN demonstrated bias and favoritism towards Deputies WARREN and LINDSAY, so therefore she had a personal conflict of interest in the case, and by law should have recused herself as the presiding judge, yet failed to do so. Defendant COWAN's ruling was conducted with personal malice, partiality, and haste towards Plaintiff, therefore deeming the hearing an unfair and unjust mistrial.

Immediately after Defendant COWAN stated that she was choosing to deny Plaintiff's request for dismissal, Plaintiff gave notice in open court that she was appealing the conviction. On October 25, 2022, which was less than one month before the Injury to Personal Property charge was scheduled to be heard

in front of a trial jury in Superior Court, District Attorney Andrew Murray dismissed the case for reason of NISITP (Not In States Interest To Prosecute).

Defendant COWAN used the courts of Henderson County as a forum for false allegations intended to deny or suppress Plaintiff's rights.

The actions of Defendant COWAN violated Plaintiff's procedural due process rights under the Fourteenth Amendment to the United States Constitution.

**EIGHTH CLAIM**
42 U.S.C. Section 1983
Deprivation of a Federal Right – Violation of Fourteenth Amendment – Equal Protection Clause – Class of One Claim
Against All Defendants

Defendants WARREN, LINDSAY, LANDERS, and OATES all used unequal application of the law against Plaintiff by omitting her from the same treatment as everybody else when they arrested her in retaliation for her protected speech, but they did not arrest any other citizen that signed the vehicle as well.

Defendants DUNCAN, REECE, MAYBIN, and COWAN contributed to the use of unequal application of the law against Plaintiff by omitting her from the same treatment as everybody else when they harassed her and/or gave her an unnecessarily malicious punishment in retaliation for her protected speech, but yet they did not harass/punish any other person amongst the collection of citizens who signed the vehicle as well.

Defendant OATES also deprived Plaintiff of her right to equal protection of the law by failing to handle Plaintiff's viable domestic violence matter with the same diligence that she would have shown to any other victim.

At the time each of the Defendants took the actions, their actions served no purpose, there was no rational basis for the disparate treatment, and they do not have any adequate justification for treating Plaintiff differently from any other citizen.

**NINTH CLAIM**
42 U.S.C. Section 1985
Conspiracy to interfere with civil rights
Against All Defendants

Each and every Defendant conspired together, with and among themselves, for the purpose of depriving Plaintiff of her Constitutional rights, equal protection of the laws, and equal privileges and immunities under the laws, which resulted in her harm, while the Defendants knew or should have known, that their actions would lead to and did cause great harm to Plaintiff.

On October 1, 2021, Defendants WARREN, LINDSAY, and OATES conspired together to enter into an unlawful agreement that they would initiate the false criminal process against Plaintiff of "INJURY TO PERSONAL PROPERTY."

Defendant LANDERS entered into the conspiracy to deprive Plaintiff of her rights prior to arriving at Plaintiff's home to arrest her on a warrant that Defendant LANDERS knew was unlawfully issued.

Defendant DUNCAN entered into the conspiracy to deprive Plaintiff of her rights when he published a false and humiliating portrayal of Plaintiff's arrest, by means of the HCSO's Facebook page and the HCSO's mobile app.

Defendant MAYBIN entered into the conspiracy to deprive Plaintiff of her rights while Plaintiff was in custody at Henderson County Detention Facility, by Defendant MAYBIN using persuasion and/or coercion to convince several bond companies to refuse to assist Plaintiff in her process of bonding out of jail.

On October 2nd, 2021, which was less than one day after Plaintiff was falsely arrested for the Injury to Personal Property charge, Defendant REECE entered into the conspiracy to deprive Plaintiff of her rights by issuing her an unnecessary fine of $550 for not answering her door when he showed up to her house to do an extremely random dangerous dog inspection.

On March 24, 2022, Defendant COWAN entered into the conspiracy to deprive Plaintiff of her rights on the day of when she denied Plaintiff of her request for

dismissal and declared her to be guilty of a charge she knew Plaintiff was innocent of.

Defendant Henderson County Sheriff's Office acted in concert with the other defendants in the wrongdoing against Plaintiff, therefore the liability is imputed to them also.

**TENTH CLAIM**
Obstruction of Justice Claim
Against Defendant OATES

On October 1st, 2021, on-duty Magistrate (Defendant OATES) criminally obstructed justice by intentionally tampering with evidence by destroying the criminal complaint form Plaintiff had submitted to Defendant OATES regarding the assault incident Plaintiff was a victim in.

Any record of file of the assault incident disappeared under the supervision of Defendant OATES, both by paper document format and electronically stored information (ESI) format.

Defendant OATES maliciously destroyed or concealed the criminal complaint form with intent to impair the object's integrity or availability for use in an official proceeding.

In doing so, Defendant OATES obstructed, hindered, and impeded the discovery, prosecution, conviction, and punishment of Plaintiff's abuser in the official proceeding where the matter involving the assault would have been addressed.

Defendant OATES would have, by default, made herself a conflict of interest by issuing both the warrant for the assault matter Plaintiff was a victim in, and then the false warrant for the Injury to Personal Property matter Plaintiff was a defendant in, so Defendant OATES chose to conceal or destroy Plaintiff's written testimony about the domestic violence incident in order to issue the false charge of Injury to Personal Property against Plaintiff.

**ELEVENTH CLAIM**

Spoliation of Evidence Claim
Against Defendant OATES

Defendant OATES had knowledge that an official proceeding or investigation was about to be, or likely to be, instituted regarding the assault matter, yet she deliberately took actions to remove/destroy the criminal complaint form with purpose to impair its value or availability as evidence in the potential proceeding.

Any record of file of the assault incident disappeared under the supervision of Defendant OATES, both by paper document format and electronically stored information (ESI) format.

That criminal complaint form would have been a vital and necessary piece of evidence to be used in the criminal case against Plaintiff's abuser.

**TWELFTH CLAIM**
Violation of Victims' Rights
North Carolina Constitution, Article 1, Section 37
Against Defendant OATES

On October 1st, 2021, Plaintiff submitted a criminal complaint form while under oath against her abuser with on-duty Magistrate OATES. The form regarded an incident where Plaintiff's abuser assaulted her while she was 16 weeks pregnant with his baby. The assault incident had occurred just a few days prior, on September 26, 2021. On the form, Plaintiff alleged "Assaulted me while I'm pregnant by strangling my throat, squeezing my torso to keep me restrained, said he wanted to kill me and my baby, said he would burn house with me in it, came towards me with my ax but I drove off before he could hurt me anymore. He stole the ax (worth $80)."

Plaintiff's allegations demonstrate a combination of the following North Carolina criminal offenses: assault on a female, battery on an unborn child, communicating threats, and misdemeanor larceny.

Approximately 7 months later, Plaintiff revisited the Magistrate's Office to ask if her abuser had been served with the assault warrant yet, and she was told by

on–duty Magistrate Jernigan that the criminal complaint form was never filed and that she was unable to locate any record related to the charges whatsoever.

On May 26, 2022, Plaintiff revisited the Magistrate's Office to speak to Defendant OATES herself, reminding her that she was the Magistrate on duty when Plaintiff came there on October 1st, 2021, to take out assault charges against her abuser. Plaintiff asked Defendant OATES why her abuser had not been served or arrested yet, but Defendant OATES avoided her question. Plaintiff asked to see the original complaint form, but Defendant OATES was unable to locate the form. Plaintiff alleges that Defendant OATES seemed "panicked, uncomfortable, dismissive, and evasive," while Plaintiff remained "calm and polite." Defendant OATES demanded Plaintiff to come back once OATES' shift ended and told Plaintiff that she needed to leave.

On September 3, 2022, Plaintiff returned to the Magistrate's Office to refile the assault charge, and was successfully able to do so. On the form, Magistrate Jernigan herself wrote "Picked her up by the throat, pushed her up at her throat, hands at neck and squeezed."

As a result, Plaintiff's abuser was charged with "Assault on a Female," and the case was still being addressed in court up until Plaintiff's abuser was deemed deceased unexpectedly, which automatically dismissed her case against him.

Plaintiff's statements in the criminal complaint form she filled out were sufficient in identifying her abusers' crimes, therefore gave viable cause for any reasonable magistrate to issue a warrant for arrest. Since Plaintiff's allegations supported more than one criminal charge, it was Defendant OATES' duty to have charged the suspect with all alleged committed offenses. Also the suspect and Plaintiff had a personal relationship. The suspect took advantage of a position of trust and confidence, in committing the offense.

Defendant OATES failed to perform the duties of the Henderson County Magistrate's Office, which includes to provide to every person who is legally interested in a proceeding, the full right to be heard according to law.

Defendant OATES caused substantial interference with Plaintiff's victim's rights, by preventing a fair and impartial investigation of the domestic violence incident that Plaintiff was a victim in.

Defendant OATES prevented Plaintiff's right to be treated with dignity and respect by the criminal justice system.

Defendant OATES prevented Plaintiff's chance to be given reasonable, accurate, and timely notice of court proceedings of the accused.

Defendant OATES prevented Plaintiff's chance to be present at court proceedings of her abuser.

Defendant OATES prevented Plaintiff's right to receive restitution from her abuser, which was to be ordered by the court.

Defendant OATES prevented Plaintiff's chance to be given information about how the criminal justice system works, the rights of victims, and the availability of services for victims.

Defendant OATES prevented Plaintiff's chance to present victims views and concerns in writing to the Governor or agency considering any action that could result in the release of Plaintiff's abuser, prior to such action becoming effective.

Defendant OATES prevented Plaintiff's chance to reasonably confer with the district attorney's office and provide a victim impact statement.

**THIRTEENTH CLAIM**
Defamation of Character – Libel
Against Defendants DUNCAN and HENDERSON COUNTY SHERIFF'S OFFICE

Defendant DUNCAN made false, libelous, and defamatory statements against Plaintiff on October 1, 2021, by publicizing a false portrayal of her arrest within posts he typed and published on the HCSO Facebook page and the HCSO mobile app.

Defendant DUNCAN recklessly made the statements with the intent that these statements would subject Plaintiff to ridicule, contempt and disgrace in her means of livelihood.

Defendant DUNCAN's actions reflect an intentional and callous disregard to Plaintiff's rights, by writing the post in such a manner that targeted, humiliated, shamed, belittled, and defamed her.

The insulting nature towards Plaintiff and the extremity of the misrepresentations about the incident contained within Defendant DUNCAN's posts triggered an extremely harsh and derogatory reaction from society in the comments section of the Facebook post. This led to unfettered pretrial publicity and biased judgment about Plaintiff by the public, causing severe harm to her reputation.

The liability for the libelous and defamatory statements made by Defendant DUNCAN against Plaintiff, as described herein, is imputed to his principal and employer, Defendant HENDERSON COUNTY SHERIFF'S OFFICE.

**FOURTEENTH CLAIM**
Invasion of Privacy – False Light
Against Defendants DUNCAN and HENDERSON COUNTY SHERIFF'S OFFICE

Defendant DUNCAN deliberately invaded Plaintiff's privacy on the date of October 1, 2021, by publicizing an inaccurate and humiliating portrayal of her arrest in a false light on the HCSO Facebook page and the HCSO mobile app.

Those posts that Defendant DUNCAN was responsible for typing and publishing became highly publicized on a local and national level after at least 21 total online sources republished his posts, most of which consisted of major news outlets.

In the posts, Defendant DUNCAN willingly and knowingly wrote statements that contained 'calculated falsehoods' and a deliberate and reckless disregard for the truth.

His statements would be considered as comments that shock the conscience and would be highly offensive to any 'reasonable' person.

Defendant DUNCAN recklessly made the statements with the intent that these statements would subject Plaintiff to ridicule, contempt, and disgrace in her means of livelihood.

The liability for the online posts published by Defendant DUNCAN in a false light about Plaintiff is imputed to his principal and employer, Defendant HENDERSON COUNTY SHERIFF'S OFFICE.

**FIFTEENTH CLAIM**
Intentional Infliction of Emotional Distress
Against All Defendants

The actions of each Defendant was motivated by malice, spite, evil motive or intent and/or involved reckless or callous indifference for the rights of Plaintiff.

Defendants' acts as described herein consist of extreme, outrageous and bullying conduct, and the acts were deliberately intended by Defendants to cause, and did in fact cause, severe emotional distress and mental anguish to Plaintiff. The emotional distress is considered ongoing because there is the threat of future harm.

Defendant Henderson County Sheriff's Office acted in concert with the other defendants in the wrongdoing against Plaintiff, therefore the liability is imputed to them also.

40

## V. INJURIES

·Emotional distress:
Defendants WARREN, LINDSAY, and LANDERS' actions, such as participating in the false arrest of Plaintiff, have caused emotional distress and humiliation for Plaintiff, which has created long-lasting psychological effects on Plaintiff, impacting her mental well-being.

Defendant DUNCAN's acts of writing social media posts that targeted, humiliated, shamed, belittled, and defamed Plaintiff has caused her severe emotional distress. The insulting nature of the posts and the subsequent negative comments from the public has had a profound impact on Plaintiff's mental well-being.

Defendant REECE's actions in imposing the $550 fine which led to the threat of euthanization of Plaintiff's dog has caused Plaintiff to experience heightened anxiety and worry about the well-being of her pet and the potential consequences of not complying with the unnecessary fine. Because Plaintiff has a strong emotional attachment to her dog, these harmful effects imposed by Defendant REECE have caused emotional distress and a sense of fear and loss for Plaintiff, affecting her mental well-being.

Defendant MAYBIN's verbal abuse towards Plaintiff as well as the intentional interference of the plaintiff's release from jail caused Plaintiff severe feelings of helplessness, anxiety, and trauma, having detrimental effects on the plaintiff's mental and emotional well-being, as well as her personal and professional life.

Defendant OATES' acts of tampering with evidence by destroying the criminal complaint form submitted by Plaintiff as the victim in the assault incident, subjected Plaintiff to misconduct by a person in a position of authority. This caused Plaintiff feelings of unsafety, powerlessness, frustration, and trauma, and has had a detrimentally negative impact on Plaintiff's life and mental well-being.

Defendant COWAN's acts that included the denial of procedural due process and the conduct of an unfair mistrial, subjected Plaintiff to an unjust legal

process, especially because it involved bias and favoritism, and caused Plaintiff significant emotional distress and feelings of frustration, helplessness, and trauma.

•Fear and apprehension: Defendants WARREN and LANDERS' hostile behavior, such as aggressively handcuffing Plaintiff without explanation and accusing her of resisting arrest, instilled fear and apprehension in her. This has created a lasting sense of unsafety and anxiety, affecting Plaintiff's daily life and overall well-being.

•Infringement of personal rights: By Defendant WARREN, LINDSAY, and LANDERS participating in violating Plaintiff's constitutional rights, such as the Fourth Amendment right to be free from unreasonable seizures, it directly infringed upon her personal rights. This infringement has created a loss of autonomy, a sense of powerlessness, and a violation of Plaintiff's dignity.

•Loss of trust in law enforcement: By each of the HCSO Defendants engaging in misconduct and harassment towards Plaintiff, it has eroded Plaintiff's trust in law enforcement. This loss of trust has created long-lasting effects, such as a sense of unsafety, fear, apprehension, and skepticism towards the justice system. This entire experience overall has had a chilling effect on Plaintiff, causing her to develop an inhibition of the exercise of natural and legal rights from fear of legal repercussions or retaliation. She has a newfound fear of the capabilities and willingness of the law enforcement officers and judicial officials in Henderson County to take unlawful actions against citizens. She has developed an avoidance of venturing into the public from fear and paranoia of being pulled over and harassed for no reason other than she is recognized. The way that it feels to think of the Henderson County Sheriff's Office and attach cruelty, injustice, and corruption as mental ties to them, is like a heavy burden that weighs on Plaintiff, rather than a secure blanket of protection and safety that the idea of law enforcement is supposed to provide.

•Humiliation and degradation: Defendant's WARREN and LANDERS participated in actions that publicly humiliated and degraded Plaintiff, when they took pictures of her being arrested in front of the pink vehicle without her permission, which were later used in the defamatory Facebook post published regarding the incident. Defendant's WARREN and LANDERS both also verbally

abused and chastised Plaintiff during the incident. Their actions have had a profound impact on Plaintiff's emotional well-being and self-esteem.

·Reputation damage: Defendant DUNCAN's false, libelous, and defamatory statements about Plaintiff, which were published on the HCSO social media page, have caused significant damage to Plaintiff's reputation. Defendant DUNCAN's actions have created feelings of shame, embarrassment, and a diminished sense of self-worth in Plaintiff, and have led to negative public perception about her, harming her personal and professional standing.

·Pretrial publicity and biased judgment: The false portrayal of Plaintiff's arrest and the extreme misrepresentations contained within Defendant DUNCAN's Facebook post triggered an extremely harsh and derogatory reaction from society in the comments section of the post. Once 20 different news outlets re-broadcasted the Facebook post that Defendant DUNCAN typed, totaling 21 sources that linked to the incident, it triggered an extremely harsh, unnecessary, and overwhelming reaction from society, causing Plaintiff to suffer through improper assertions of guilt.

·Harm to means of livelihood: Defendant DUNCAN's false portrayal of Plaintiff's arrest severely damaged her reputation and created a negative perception of her by the public. Defendant DUNCAN's intentional and malicious actions, aimed at subjecting Plaintiff to ridicule and disgrace, have had a detrimental impact on her means of livelihood. After Plaintiff bonded out of jail the night of the arrest, there was a message waiting for her in her Facebook Messenger account from a random stranger that said "You'll never get as much time as you deserve you worthless piece of s***," so Plaintiff felt the need to go ahead and delete her Facebook and Facebook Messenger account before it had a chance to get any worse.

·Financial burden: Defendant OATES was responsible for the authorization of the "INJURY TO PERSONAL PROPERTY" warrant for Plaintiff's arrest, which led to legal expenses associated with the arrest. Defendant OATES set Plaintiff's bail amount as a $2000 secured bond, which is an amount that is unusually high for the charge of Injury to Personal Property, and since Defendant OATES set the bond as secured, Plaintiff was required to stay in jail until the bail was paid. Defendant OATES had knowledge that Plaintiff was

43

innocent of the alleged crime and that the warrant was based on false statements and contained an omission of relevant information. Despite this knowledge, Defendant OATES still proceeded with the arrest, which resulted in the financial burden of unnecessary expenses associated with fighting false charges, causing Plaintiff significant stress, hardship, and disruption to her daily life.

·Financial burden: Defendant REECE's imposition of a $550 fine on the plaintiff for not answering her door for a dangerous dog inspection caused her a financial burden. This unnecessary fee issued by Defendant REECE created a situation in which Plaintiff had to choose between paying the fine or being one step closer to losing her pet forever. This financial burden caused significant stress and hardship in Plaintiff's life.

·Coercion and intimidation: Defendant REECE's use of intimidation tactics to retaliate against Plaintiff through the imposition of the $550 fine created a power dynamic where Plaintiff felt compelled to comply with the demands of Defendant REECE, regardless of his demands being unjust or unreasonable, or else Plaintiff's dog would be one step closer to being euthanized by Animal Enforcement. Defendant REECE partook in inducing extreme fear in Plaintiff of her dog being punished where that fear was not prevalent beforehand.

·Denial of liberty rights: Defendants WARREN, LINDSAY, LANDERS, and OATES' actions to initiate and implement Plaintiff's confinement to jail, despite each of them knowing she was innocent of the alleged crime, and Defendant MAYBIN's actions in impeding Plaintiff's release from jail by coercing surety companies to deny assistance with her bail, have had significant negative consequences for Plaintiff, including the loss of personal freedom, disruption of daily life, and harm to her reputation.

·Prolonged incarceration: Defendant MAYBIN's use of intimidation tactics to coerce surety companies to refuse to assist Plaintiff in her process of bonding out of jail unnecessarily prolonged Plaintiff's incarceration. Being held in custody unlawfully and facing obstacles to secure release caused Plaintiff to experience an extreme disruption in her personal life, which interfered with her ability to handle her personal responsibilities and obligations, and severely impacted her well-being and livelihood. During the time she spent in custody,

Plaintiff was never once offered a face mask, hand sanitizer, or shown any sort of consideration for her concerns for cleanliness seeing that COVID was still extremely contagious, Plaintiff was unvaccinated, and she was 17 weeks pregnant at the time.

·Violation of domestic violence victim's rights: Defendant OATES' violation of Plaintiff's victim's rights have had detrimental consequences on Plaintiff's life. By failing to handle Plaintiff's viable domestic violence matter with the same diligence as she would have shown to any other victim, Defendant OATES significantly deprived Plaintiff of the necessary protection and support she deserved. This violation left Plaintiff feeling vulnerable, unsupported, and at risk. It has sickened Plaintiff that Defendant OATES failed to reasonably, morally, and lawfully issue the charges against Plaintiff's abuser regarding the assault incident, regardless of however opinionated or biased her interpretation of Plaintiff's "12 SUX" signage might have been. It worries and scares Plaintiff as a citizen of Henderson County and North Carolina that a Magistrate that would intentionally make such an immoral, unethical, and unprincipled set of choices exists in our judicial system.

·Impeded access to justice: Defendant OATES' mishandling of Plaintiff's viable domestic violence matter resulted in delayed access to legal justice regarding the assault incident. By failing to provide the necessary support and protection, and by tampering with evidence, Defendant OATES hindered Plaintiff's ability to seek legal remedies, hold the perpetrator accountable, and obtain a fair resolution to her case.

·Undermined trust in the judicial system: Plaintiff entrusted Defendant OATES with upholding the law to protect victims, including those of domestic violence, and instead became a victim of Defendant OATES' unethical behavior and violations to Plaintiff's victims rights. Plaintiff entrusted Defendant COWAN to abide by fairness and impartiality in the legal system, and instead was severely harmed by Defendant COWAN's bias, favoritism, and failure to recuse herself despite a personal conflict of interest. Defendants OATES and COWAN, both being judicial officials entrusted with upholding the integrity of the law by holding positions of power and both of them significantly breaking this trust, have created long-lasting effects on Plaintiff's confidence in the

legal system, perception of justice, and her willingness to seek help or report future incidents.

·Unfair and unjust mistrial: Defendant COWAN undermined the principles of fairness and justice during the 'trial by judge' hearing for the Injury to Personal Property case by ignoring facts that made it obvious Plaintiff was innocent of the alleged crime and convicting her anyway. Defendant COWAN conducted this mistrial with personal malice, partiality, and haste, which had significant negative consequences for Plaintiff's rights and perception of the fairness of the justice system.

·Damage to reputation and livelihood: Defendant COWAN's acts of unjustly convicting Plaintiff and conducting a mistrial with personal malice has had severe consequences for Plaintiff's reputation and livelihood, such as stigmatization, public scrutiny, and long-lasting damage to her personal reputation and legal standing.

·Loss of self worth: From the entire experience, Plaintiff has developed negative ideas about herself that are extremely difficult to dismantle. She has developed unrealistic expectations for herself, and she experiences persistent worries and nervousness from overanalyzing other people's intentions, which has manifested in an decreased ability to carry out responsibilities, usually from fear of making mistakes. The entire experience has caused Plaintiff to feel helpless, misunderstood, targeted, humiliated, embarrassed, degraded, and alone. She has lost self-love and confidence and become much more overly self-conscious and self-critical. She has newfound broken self-esteem, feelings of inadequacy, and distorted ideas of her worth, value, or capabilities where she seldom felt these things prior to the incidents.

46

## VI. RELIEF:

Upon making a determination that a defendant has indeed violated the rights of the Plaintiff, request for action to be taken to correct the defendant's wrongdoing, including but not limited to, a combination of the below-stated actions to be pursued as penalties:

Declaratory Relief that Plaintiff's constitutional rights have been violated.

Injunction ordered by the court to correct violations and to ensure non-reoccurance of further violations of Plaintiff's rights. If the injunction is violated, the Defendants to be held in "contempt" by the court.

Nominal damages for violations of Plaintiff's rights.

Presumed damages for the injury to Plaintiff's reputation and accompanying mental suffering.

Compensatory damages to compensate Plaintiff for the injury or loss caused by defendants' unlawful conduct, including but not limited to the economic damages of out-of-pocket expenses such as the $2000 bail bond and the $550 fine from Animal Enforcement, as well as the non-economic damages of personal humiliation, pain and suffering, mental anguish, and emotional distress.

Punitive damages to go beyond what compensatory damages are deemed insufficient for, with intention to punish the defendants for their actions that were "motivated by evil motive or intent" or involved "reckless or callous indifference" to Plaintiff's rights.

Prospective Relief for all relief other than monetary damages.

Official Reprimandence, Demotion, Suspension, or License Revocation of the HCSO law enforcement officers and Magistrate OATES where deemed necessary.

47

Suppression and deletion of any evidence or documentation that was obtained from the false arrest or related to the incident. This would include not only legal paperwork, but also any online publication, article, or post involving the false portrayal of the incident linked in any way whatsoever to Plaintiff's name or face. Plaintiff requests that HCSO reach out to each of the 21 sources listed on the following page, and not only request that the posts be removed, but ensure it.

Attorney's fees and/or pro se litigant fees to be awarded to Mackenzie Elaine Brown.

For a trial by jury on all appropriate issues set forth in this Complaint.

Any and all other and further relief and remedies that this Court deems just and proper.

48

**NAME OF SOURCE:**
1. Daily Advent: Opera News
2. Facebook: Fox Eastern Carolina page
3. Facebook: Henderson County Sheriff's Office page
4. Facebook: WLOS ABC 13 page
5. Fox San Antonio
6. Henderson County Sheriff's Office App
7. Mountain Area Information Network
8. MSN
9. My40
10. NC Criminal Law A UNC School of Government Blog
11. News 4 San Antonio
12. News Beezer
13. News Break
14. Spotonorthcarolina
15. Twitter: WSAV News 3 page
16. WCTI12: ABC 12 News
17. WJBF
18. WLOS: News 13
19. WRBL: News 3
20. WSAV-TV
21. WSPA: News 7

**LINKS:**

**1. Daily Advent: Opera News**
https://www.dailyadvent.com/news/amp/6a69e1d2cef9cd032f6a9e0c967a638f-Henderson-County-Sheriffs-Office-tribute-patrol-car-vandalized

**2. Facebook: Fox Eastern Carolina**
https://m.facebook.com/story.php?story_fbid=pfbid02SSYAc6hC2DqX8rsHbMRLy3Nje9qkPFbX3wyXnMGKsmypy1EJHDbmAdLfDRkAAbvml&id=1569995973016444

**3. Facebook: Henderson County Sheriff's Office page**
https://m.facebook.com/story.php?story_fbid=226687436157771&id=100064495491934

**4. Facebook: WLOS ABC 13 page**
https://m.facebook.com/News13/posts/a-flat-rock-woman-has-been-charged-with-vandalizing-a-henderson-county-sheriffs-/10158779821811799/?locale=ne_NP&_rdr

**5. Fox San Antonio**
https://foxsanantonio.com/amp/news/nation-world/tribute-patrol-car-vandalized

**6. Henderson County Sheriff's Office App**

https://apps.myocv.com/share/a39828792

**7. Mountain Area Information Network**

http://main.nc.us/cnnews/archives/202110.shtml

**8. MSN**

https://www.msn.com/en-us/news/crime/henderson-county-sheriffs-office-tribute-patrol-car-vandalized/ar-AAP4I24

**9. My40**

https://my40.tv/tribute-patrol-car-vandalized

**10. NC Criminal Law A UNC School of Government Blog**

https://nccriminallaw.sog.unc.edu/news-roundup-586/

**11. News 4 San Antonio**

https://news4sanantonio.com/news/nation-world/tribute-patrol-car-vandalized

**12. News Beezer**

https://newsbeezer.com/woman-arrested-after-destroying-the-new-pink-henderson-co-sheriffs-office-police-car/

**13. News Break**

https://www.newsbreak.com/news/2390362352717/woman-arrested-after-vandalizing-henderson-co-sheriff-s-office-new-pink-patrol-car

**14. Spotonorthcarolina**

https://spotonnorthcarolina.com/mountains/1808025/henderson-county-sheriffs-office-tribute.html

**15. Twitter: WSAV News 3 page**

https://mobile.twitter.com/WSAV/status/1445105845721837571

**16. WCTI12: ABC 12 News**

https://wcti12.com/news/state-news/henderson-county-sheriffs-office-tribute-patrol-car-vandalized

**17. WJBF**

https://www.google.com/amp/s/www.wjbf.com/news/woman-arrested-after-vandalizing-henderson-co-sheriffs-office-new-pink-patrol-car/amp/

**18. WLOS: News 13**

https://wlos.com/news/local/tribute-patrol-car-vandalized

**19. WRBL: News 3**

https://www.wrbl.com/news/national/woman-arrested-after-vandalizing-henderson-co-sheriffs-office-new-pink-patrol-car/amp/

**20. WSAV-TV**

https://www.wsav.com/crime-safety/woman-arrested-after-vandalizing-new-pink-patrol-car/?utm_campaign=socialflow&utm_medium=referral&utm_source=t.co

**21. WSPA: News 7**

https://www.wspa.com/news/local-news/woman-arrested-after-vandalizing-henderson-co-sheriffs-office-new-pink-patrol-car/amp/

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: April 15, 2024

Signature of Plaintiff   *Mackenzie Elaine Brown*

Printed Name of Plaintiff   Mackenzie Elaine Brown

### B. For Attorneys

Date of signing: _____

Signature of Attorney   _____

Printed Name of Attorney   _____

Bar Number   _____

Name of Law Firm   _____

Address   _____

|  | City | State | Zip Code |
|---|---|---|---|

Telephone Number   _____

E-mail Address   _____

# **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing to the U.S. Clerk of Courts Office, and mailed

a copy to the following attorney of the Defendants:


Sean F. Perrin
Womble Bond Dickinson (US) LLP
301 S. College Street, Ste. 3500
Charlotte, North Carolina, 28202
Telephone: 704-331-4992
Facsimile: 704-338-7814
sean.perrin@wbd-us.com
Counsel for Defendants Henderson County Sheriff's Office, Robert Jordan
Warren, Michael Scott Lindsay, Crystal D. Landers, Johnny E. Duncan Jr.,
Bradley R. Reece, and Brittany Nicole Maybin.




Dated _April 15, 2024_ .


_Mackenzie Elaine Brown_

Mackenzie Elaine Brown,
Plaintiff & Pro Se Litigant
158 Haven Rd, East Flat
Rock, NC 28726
P: 828-642-0406
E: mackenzieb0897@gmail.com

# **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing to the U.S. Clerk of Courts Office, and mailed

a copy to the following attorney of the Defendants:

Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6800
Fax: (919) 716-6755
eobrien@ncdoj.gov
State Bar No. 28885
Counsel for Defendants Oates & Cowan

Dated _April 15, 2024_ .

_Mackenzie Elaine Brown_

Mackenzie Elaine Brown,
Plaintiff & Pro Se Litigant
158 Haven Rd, East Flat
Rock, NC 28726
P: 828-642-0406
E: mackenzieb0897@gmail.com