IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:23-CV-270

| | |
|---|---|
| MACKENZIE ELAINE BROWN<br><br>Plaintiffs,<br><br>v.<br><br>HENDERSON COUNTY SHERIFF'S OFFICE, et al.<br><br>Defendants. | **REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |

I. **PLAINTIFF'S FIRST AMENDMENT RETALIATION, FALSE ARREST, AND MALICOUS PROSECUTION CLAIMS SHOULD BE DISMISSED BECAUSE THERE WAS PROBABLE CAUSE FOR HER ARREST**

In support of her First Amendment retaliation, false arrest, and malicious prosecution claims, Plaintiff contends that Defendants retaliated against her for "her protected expression of speech," and falsely arrested her because the warrant was unsupported by probable cause. [Document 43-1, pp. 13, 22, 24].[1] Plaintiff's conviction for injury to personal property bars all three claims. [Document 40, p. 8]. While Plaintiff admits that she was convicted of injury to personal property in

---

[1] Plaintiff's response is 41 pages, and Local Rule 7.1(D) of the United States District Court for the Western District of North Carolina provides that the page limit for briefs is 25 pages. Local Rule 7.1(D). Given Plaintiff's pro-se status, Defendants do not object to this Court's consideration of Plaintiff's entire response brief.

district court by Judge Cowan, she contends that Judge Cowan convicted her to show "bias and favoritism towards the deputies." [Document 43-1, p. 10.] In *Cranford v. Kluttz*, 278 F.Supp.3d 848 (M.D.N.C. 2017), the district court considered a similar question. Plaintiff was found guilty of disorderly conduct in district court, and not guilty in superior court. *Id*. at 855. Plaintiff claimed that the district court conviction did not establish probable cause because it was "obtained by unfair means, namely false information." *Id*. at 869. In rejecting this claim and finding that the district court conviction established probable cause, the district court found that there was no evidence of any false confessions or false testimony which demonstrated that the district court conviction was procured "fraudulently or unfairly." *Id*. (citations omitted). Likewise, in this case, Plaintiff makes no allegations that any false testimony was procured leading to her conviction, but only that her trial was "unfair and unjust." [Document 43-1, p. 16]. As a result, her retaliation claim based upon her arrest, as well as her false arrest and malicious prosecution claims, should be dismissed. See also *Humphreys v. Rowan- Salisbury Board of Education*, 2023 WL 2692433 at * 6 (M.D.N.C. 2023) (unpublished) (rejecting claim that district court and superior court convictions did not establish probable cause because they were "unfair" after Court of Appeals reversed the convictions).

Plaintiff claims Duncan retaliated against her by making "inaccurate, defamatory, and humiliating statements against [her] by publicizing a false portrayal of her arrest." [Document 43-1, p. 17]. As set forth in Defendants' brief in support of the motion to dismiss, there is no violation of the First Amendment when mugshots are posted unless it is "accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." [Document 40, pp. 10-11]; *Randall v. Facebook, Inc.*, 718 Fed. Appx. 99, 100 (4th Cir. 2017) (unpublished) (citations omitted). Plaintiff makes no allegations that the posting of her mugshots caused her, for instance, to lose her job or a job opportunity as a result of Duncan's posts. *See e.g. Witt v. Town of Brookside*, 2021 WL 4820654 at ** 13-14 (N.D. Al. 2021) (pleading the loss of a chance for a better job opportunity as a result of Facebook and Crime Stopper posts satisfies the "stigma-plus" test for when defamatory speech can violate the Fourteenth Amendment.) While Plaintiff contends that Duncan posted more than mugshots- including pictures of her in front of the defaced patrol car- [Document 43-1, p. 17], Plaintiff still does not allege how her rights were changed as a result of these posts.

Plaintiff claims that Reese violated her First Amendment rights by giving her a ticket with a $550 fine for not answering her door the morning after the arrest. [Document 43-1, p. 18] However, as set forth in Defendants' motion, the fine issued by Reese was authorized by the Henderson County ordinance.

3

Case 1:23-cv-00270-MR-WCM    Document 46    Filed 06/26/24    Page 3 of 9

[Document 40, p. 12]. Plaintiff also fails to explain how Reese's actions were in any way connected to her First Amendment actions of writing "12 Sux" on the pink patrol car. There are no allegations that Reese, unlike Warren, Lindsay, Landers, or Maybin even knew of Plaintiff's criminal conduct. While Plaintiff claims Reece showed up to her house "less than 24 hours" after the arrest [Document 43-1, p. 19], the Fourth Circuit has characterized the "causal relationship" element for retaliation claims as "rigorous." *Huang v. Bd. of Governors of the Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir.1990)). In order to demonstrate "this causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of her engaging in protected activity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir.2005) (citation omitted).

Last, Plaintiff claims that Maybin used "intimidation tactics to persuade bail bond companies to deny assisting Plaintiff through their agencies." [Document 43-1, p. 19]. This claim is belied by the fact that Plaintiff bonded out at 8:20 pm, less than three hours after she was processed into Jail. [Document 40, p. 10]. Plaintiff also contends that Maybin violated her rights because Maybin "knew she was innocent of the crime she was in jail for…yet still took actions to prolong Plaintiff's confinement to jail." [Document 43-1, p. 20]. As this Court knows, a detention officer cannot simply release someone from jail if they think that person

is "innocent." N.C.G.S. § 15A-537 (a) ("any law-enforcement officer or custodial official having the person in custody must effect the release upon satisfying himself that the conditions of release have been met"). When Plaintiff made her bond, she was released- there are no allegations that Maybin unlawfully held Plaintiff after Plaintiff satisfied her conditions of release.

### III. PLAINTIFF'S HARASSING AND INTIMIDATING CONDUCT CLAIM SHOULD BE DISMISSED

In her response to Defendants' motion to dismiss the "harassing and intimidating" conduct claim, Plaintiff argues that 1) her arrest; 2) her handcuffing; 3) the verbal abuse directed towards her; 4) the actions by Maybin to deny her bond; 5) Duncan's statement; 6) Reese giving her a ticket; and 7) the attempts to get her to plead guilty, amounted to harassment. [Document 43-1, pp. 25-26]. In essence, Plaintiff has packaged her First Amendment claims into a generic "harassing and intimidating" claim. As this claim stems from the same facts as Plaintiff's First Amendment claim, it should be dismissed as duplicative of that claim. *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010) ("[a]s a matter of judicial economy, courts should dismiss a claim if it is duplicative of another claim in the same suit."); *McGee v. District of Columbia*, 646 F.Supp.2d 115, 121–22 (D.D.C.2009) (noting that duplicative claims are those that stem from identical

allegations, that are decided under identical legal standards, and for which identical relief is available.).

## IV. **PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIMS SHOULD BE DISMISSED**

Plaintiff's procedural due process claims for abuse of process and liberty interest are based upon the allegedly false warrant, which allowed Warren and Landers to arrest Plaintiff. [Document 43-1, pp. 28, 30]. As set forth above, there was probable cause for this warrant and arrest, and therefore Plaintiff cannot show that the process was used for an "improper purpose" or that she was deprived of a liberty interest. [Document 40, pp. 14-15].

## V. **PLAINTIFF'S EQUAL PROTECTION CLASS OF ONE CLAIM SHOULD BE DISMISSED**

Plaintiff's Equal Protection claim is based upon her arrest, and the allegedly harsh punishment she received as a result of her speech. [Document 43-1, p. 32]. As set forth earlier, there was probable cause for her arrest based upon Plaintiff's conviction, and she therefore cannot establish that there is no rational basis for her treatment, as required for a Class of one Equal Protection claim. *Herman v. Lackey*, 309 Fed. Appx. 778, 785 (4th Cir. 2009).

## VI. PLAINTIFF'S CONSPIRACY CLAIM SHOULD BE DISMISSED

Plaintiff contends that her conspiracy claim is viable because Defendants "conspired together to enter into an unlawful agreement that they would initiate the false criminal process against Plaintiff for 'INJURY TO PERSONAL PROPERTY.'" [Document 43-1, p. 34] (capitals in original) As Plaintiff's district court conviction established probable cause for her arrest, she cannot establish a conspiracy claim. *Hinkle v. City of Clarksburg*, 81 F.3d. 416, 421 (4th Cir. 1996) (conspiracy under section 1983 requires the deprivation of a constitutional right). While Plaintiff contends that Duncan and Maybin "entered into the conspiracy," [Document 43-1, p. 34], there are no facts to support this legal conclusion.

## VII. PLAINTIFF'S STATE CLAIMS SHOULD BE DISMISSED

Plaintiff accurately cites the elements of libel, but ignores Defendants' argument that the one year statute of limitations bars her libel claim. [Document 43-1, pp. 35-36]. Plaintiff also ignores Defendants' argument that "invasion of privacy-false light" claims are not cognizable in North Carolina. *Id*. at p. 37. Even if such a claim existed in North Carolina, while Plaintiff contends that Duncan's statements were "inaccurate and humiliating," she does not contend which statements were untrue other than his statement that "Several hours after unveiling this car… [Plaintiff] decided it would be a good idea to show her respect by coming to the Sheriff's Office and vandalizing this tribute car." [Document 43-1, p. 37]. This

statement simply repeats facts that she vandalized the tribute car at the Sheriff's Office after it was unveiled.

Last, while Plaintiff recounts the elements of intentional infliction of emotional distress correctly, she does not identify the alleged outrageous acts other than saying "[t]he actions of each Defendant." [Document 43-1, p. 38]. As set forth earlier, all of Defendants' acts were lawful, and therefore cannot be extreme and outrageous conduct sufficient for an intentional infliction of emotional distress claim.

## VIII. **CONCLUSION**

For the foregoing reasons, and those set forth in Defendants' motion to dismiss, Defendants respectfully request that the Court grant this motion to dismiss.

This 26th day of June, 2024.

> s/Sean F. Perrin
> Womble Bond Dickinson (US) LLP
> 301 S. College Street, Ste. 3500
> Charlotte, North Carolina 28202
> Telephone: 704-331-4992
> Facsimile: 704-338-7814
> Sean.Perrin@wbd-us.com
> *Attorney for Defendants Henderson County Sheriff's Office, Robert Warren, Michael Lindsay, Crystal Landers, Johnny Duncan, Jr., Bradley Reese, and Brittany Maybin*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via the CM/ECF system and mailed the foregoing to the following non CM/ECF user as follows:

Mackenzie Elaine Brown
158 Haven Road
East Flat Rock, NC 28726

Dated: June 26, 2024.

s/Sean F. Perrin