## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CIVIL NUMBER 1:23-CV-270

MACKENZIE ELAINE BROWN

    Plaintiff

v.

HENDERSON COUNTY SHERIFF'S
OFFICE, et al.

    Defendants

**PLAINTIFF's MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TC DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

    Plaintiff, Mackenzie Elaine Brown, on this day of _July 12_, 2024, hereby submits this Memorandum of Law in Support of her Opposition to the Motion to Dismiss for Failure to State a Claim and the Motion to Dismiss for Lack of Jurisdiction, filed by Defendants Susan N. Oates and Emily Greene Cowan, (collectively the Judicial Defendants). [Document 41].

# I. __INTRODUCTION__

I, Mackenzie Elaine Brown, as the Pro Se Litigant in this matter, will refer to myself throughout the entirety of this document as "Plaintiff".

Plaintiff originally initiated this lawsuit on September 14, 2023, against the Defendants by filing a complaint that asserted civil action for deprivation of rights under 42 U.S. Code Section 1983. On December 1, 2023, the Judicial Defendants filed a Motion to Dismiss Plaintiff's Original Complaint [Doc 17], to which Plaintiff filed an Opposition to Motion to Dismiss[Docs 23, 24, 25, 26] on January 3, 2024. On April 15, 2024, Plaintiff moved the Court for leave to amend her complaint [Doc 32], which the Judicial Defendants opposed [Doc 35], but the court granted Plaintiff's Motion for Leave to File her Amended Complaint [Doc 36]. On May 13, 2024, Plaintiff filed her Amended Complaint [Doc 37]. On May 14, 2024, this Court denied the defendants' motions to dismiss as moot as a matter of law [Doc 38]. In response to Plaintiff's Amended Complaint, the Judicial Defendants filed a Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction on May 28, 2024 [Doc 41].

This Motion of Opposition is filed in response to Defendants Susan N. Oates and Emily Greene COWAN's (collectively "Judicial Defendants") Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction for Plaintiff's Amended Complaint.

Plaintiff's Amended Complaint asserts 15 total claims [Doc 37, Pages 24-40]. The following claims are against one or more of the Judicial Defendants:

- Claim One: 1st Amendment Violation – Freedom of Speech – Retaliatory Arrest: against both OATES and COWAN.
- Claim Two: 4th Amendment Violation – Unlawful Seizure – False Arrest Without Probable Cause: against OATES.
- Claim Three: 4th Amendment Violation – Malicious Prosecution: against OATES.
- Claim Four: 4th Amendment Violation – Harassment and Intimidation: against both OATES and COWAN.
- Claim Five: 14th Amendment Violation – Procedural Due Process – Abuse of Process: against OATES.
- Claim Six: 14th Amendment Violation – Procedural Due Process – Liberty Interest: against OATES.
- Claim Seven: 14th Amendment Violation – Procedural Due Process – Wrongful Conviction Claim: against COWAN.
- Claim Eight: 14th Amendment Violation – Equal Protection Clause – Class of One: against both OATES and COWAN.
- Claim Nine: 42 U.S.C. Section 1985 – Conspiracy to violate Plaintiff's rights: against both OATES and COWAN.
- Claim Ten: Obstruction of Justice: against OATES.
- Claim Eleven: Spoliation of Evidence: against OATES.
- Claim Twelve: Victim's Rights Violation – North Carolina Constitution Article 1, Section 37: against OATES.
- Claim Fifteen: Intentional Infliction of Emotional Distress: against both OATES and COWAN.

## II. FACTS

On September 26, 2021, Plaintiff was the pregnant victim in a domestic violence assault incident while at her home in Henderson County, NC. On that day, she was 16 weeks pregnant with the baby of Dillion Branch. [Doc 37, Page 7].

During the incident, Branch assaulted Plaintiff by strangling her throat, squeezing her torso to keep her restrained, communicating threats to her by threatening to kill her and the baby inside of her and to burn the house with her inside of it, and came towards her with an ax raised. [Doc 37, Page 7].

Plaintiff was able to escape from Branch by getting into her vehicle and fleeing her home. Plaintiff immediately called 911, who told her that since she was driving, they would direct a deputy to call her to discuss the incident. [Doc 37, Page 7]. Exhibit 1.[1] During the phone call, the officer recommended to Plaintiff that she go to the Magistrate's Office and take out charges against Branch in her spare time. [Doc 37, Page 7].

So 5 days later, on October 1, 2021, around noon, Plaintiff arrived at Henderson County Magistrates Office to file charges against Branch. [Doc 37, Page 7]. After parking, she observed a pink patrol cruiser parked on display in front of the Sheriff's Office. She noticed that HCSO had black Sharpies laid out

---

[1] Exhibit 1 is the 911 phone call record from Plaintiff to Henderson County Emergency Communications on September 26, 2021, regarding the domestic violence incident where Branch abused Plaintiff.

on the hood and that there was already signage on various parts of the car. [Doc 37, Page 8].

The background story of this is that HCSO was willingly giving the public an open invitation for signage on the pink car as part of their event that AdventHealth funded, even providing the sharpies to write on it with. [Doc 37, Page 8].

Plaintiff proceeded to the Magistrate's Office, and once inside, she filled out a criminal complaint form against Branch. On the form, Plaintiff explained that Branch assaulted her by strangling her throat, assaulted her unborn baby by squeezing her torso, communicated threats to her, came towards her with an ax raised, and that he stole the ax. [Doc 37, Page 8-9]. Exhibit 2.[2]

After Plaintiff finished filling out the form, she took a picture of it with her phone. Then, while under oath, she submitted the criminal complaint form against Branch to the Magistrate on-duty (Defendant SUSAN N. OATES). [Doc 37, Page 9].

Plaintiff then exited the Magistrate's Office and proceeded to walk back to her vehicle. Along the way, she more closely observed the pink car parked on display. Plaintiff noticed that there were not any rules or restrictions as to what could or could not be written on it. Plaintiff wrote "12 SUX" on the quarter panel section of the vehicle with one of the Sharpies they had laid out. Her

---

[2] Exhibit 2 is of the criminal complaint form that Plaintiff filled out before submitting it under oath to Magistrate SUSAN N. OATES on October 1, 2021, regarding the assault incident Plaintiff was a victim in.

signage took up a space no bigger than the palm of her hand. [Doc 37, Page 9]. Afterwards, she returned to her vehicle and drove home. [Doc 37, Page 10].

About 1 hour later, while at her house, Plaintiff heard loud knocking on her door, and when she opened it, she was yanked out of her doorway by Deputies WARREN and LANDERS (Defendants ROBERT JORDAN WARREN and CRYSTAL D. LANDERS). Plaintiff immediately informed them that she was pregnant. [Doc 37, Page 10].

Deputies WARREN and LANDERS aggressively handcuffed Plaintiff without telling her why, despite her many attempts to ask them why she was being arrested when she had not broken any laws. [Doc 37, Page 10]. Deputies WARREN and LANDERS verbally abused Plaintiff for several minutes. Deputy WARREN took pictures of Plaintiff being arrested in front of the pink car. Deputy LANDERS drove Plaintiff to jail in the back of the pink car, in what she called "an effort to humiliate and shame" her. [Doc 37, Page 11].

Upon arrival at Henderson County Detention Facility, Plaintiff was served with a Warrant for Arrest, issued by Magistrate OATES, for the criminal offense of Injury to Personal Property, with a secured bond of $2,000. [Doc 37, Page 12]. OATES was the same Magistrate on duty several hours prior, when Plaintiff had come to file charges against Branch. [Doc 37, Page 12].

The Warrant for Arrest stated that Plaintiff "unlawfully and willfully did wantonly injure personal property, HENDERSON COUNTY SHERIFF'S OFFICE

PATROL VEHICLE, CAR NUMBER SH 208, the property of HENDERSON COUNTY SHERIFF'S OFFICE. The damage caused was in excess of $200." [Doc 37, Page 12].

Plaintiff was then photographed, fingerprinted, and moved to a solitary cell, where she used the phone to contact her friend to find a bail bondsman for her. [Doc 37, Page 13]. Plaintiff was released from custody at 8:13 PM. [Doc 37, Page 14].

During the timeframe that Plaintiff had been in custody, HCSO's Public Information Officer (Defendant JOHNNY E. DUNCAN JR.) made a post on HCSO's Facebook page defaming Plaintiff in a false light about her arrest. [Doc 37, Page 14]. The Facebook post had the pictures that Deputy WARREN took of Plaintiff earlier that day, standing handcuffed in front of the pink vehicle. [Doc 37, Page 14]. Plaintiff's family and friends contacted HCSO and requested that the Facebook post be removed, but it was not removed. [Doc 37, Page 16].

About half a year later, on March 24, 2022, there was a 'trial by judge' hearing at Henderson County Courthouse on the INJURY TO PERSONAL PROPERTY matter with Defendant EMILY GREENE COWAN presiding as the District Court Judge. [Doc 37, Page 17].

During that court appearance, while on the witness stand, Deputies WARREN and LINDSAY (Defendants ROBERT JORDAN WARREN and MICHAEL SCOTT LINDSAY) both acknowledged that HCSO was allowing the entire public

community to add signage with Sharpies onto the pink vehicle for their event, and that there were no rules or regulations posted anywhere as to what could or could not be written on it. [Doc 37, Page 17].

Plaintiff's Public Defender entered a "Not Guilty" plea for the Injury to Personal Property charge, on the grounds that she was the only person that signed the vehicle to get arrested, so as a result her First Amendment rights had been violated because her signage was Constitutionally protected. [Doc 37, Page 18]. However, Judge COWAN denied Plaintiff's Request for Dismissal, and instead convicted her of the Injury to Personal Property charge. Plaintiff believes Judge COWAN did this to show "bias and favoritism towards the deputies." [Doc 37, Page 18]. Plaintiff immediately appealed the conviction to Henderson County Superior Court. [Doc 37, Page 18].

Around 7 months later, Plaintiff's Public Defender told her to be ready for the case to be heard in front of a trial jury at the next court appearance, and a trial date was set for November 7, 2022. [Doc 37, Page 22]. But it never happened, because on October 25, 2022, the INJURY TO PERSONAL PROPERTY charge was dismissed for the reason of NISITP (Not In The States Interest To Prosecute). [Doc 40-6, Page 2].

Rewinding back to April of 2022, which was around 7 months after Plaintiff's original visit to the Magistrate's Office to file charges against Branch (on October 1st, 2021 when Magistrate OATES was on duty), Plaintiff

returned to the Magistrate's Office to inquire about the status of the matter. [Doc 37, Page 19].

Plaintiff was told by on-duty Magistrate Monica Jernigan that the criminal complaint form "was never filed," and that she was unable to locate any record related to the charges against Branch whatsoever. [Doc 37, Page 19]. Magistrate Jernigan told Plaintiff she didn't understand why the charges were never filed against Branch or why she couldn't find any record whatsoever of the form itself. [Doc 37, Page 19].

Plaintiff told Magistrate Jernigan, "I had come here (to the Magistrates Office) and filled out the form right before I was falsely arrested for Injury to Personal Property (the incident involving me being arrested for the "12 SUX" signage)." [Doc 37, Page 19]. Magistrate Jernigan informed Plaintiff that OATES would have been unable to process the Injury to Personal Property arrest on the same day that Plaintiff filed charges against her abuser, because that would have made OATES a 'conflict of interest'.

After Plaintiff reached the conclusion that Magistrate OATES deliberately did not issue any criminal charges against Branch, as well as destroyed any evidence of the form Plaintiff had submitted under oath, Magistrate Jernigan instructed Plaintiff to come back when Magistrate OATES would be on-duty so that she could figure out what happened to that form. [Doc 37, Page 19-20].

On May 26, 2022, Plaintiff arrived at the Magistrate's Office to ask Magistrate OATES why Branch had not been served or arrested yet in regards to the assault incident on September 26, 2021.

Plaintiff asked to see the original complaint form, but Magistrate OATES was unable to locate it. [Doc 37, Page 20-21]. Plaintiff alleges that OATES seemed "panicked, uncomfortable, dismissive, and evasive." Plaintiff alleges that OATES' tone was "high-pitched and hostile," while Plaintiff spoke in a "calm and polite tone the entire time, with genuine concern for the whereabouts of the form," that had disappeared under Magistrate OATES' supervision. [Doc 37, Page 21]. Magistrate OATES told Plaintiff to come back once OATES' shift ended and then told Plaintiff that she needed to leave. [Doc 37, Page 21].

On September 3rd, 2022, Plaintiff returned to the Magistrate's Office and made a second attempt to file criminal charges against Branch regarding the assault incident, this time with on-duty Magistrate Monica Jernigan. [Doc 37, Page 21].

Magistrate Jernigan herself filled in the section that described the allegations of the suspect. Jernigan wrote, "Picked her up by the throat, pushed her up at throat, hands at neck and squeezed." [Doc 37, Page 21]. Exhibit 3.[3]

---

[3] Exhibit 3 is of the criminal complaint form that Plaintiff filled out before submitting it under oath to Magistrate Monica Jernigan on September 3, 2022, regarding the assault incident Plaintiff was a victim in.

Just as she did with the form she filled out with Magistrate OATES, Plaintiff took a picture of the form once it was completed. [Doc 37, Page 21]. Then she submitted the criminal complaint form against Branch to Magistrate Jernigan while under oath.

Magistrate Jernigan issued Branch a Criminal Summons to appear in Henderson County court for ASSAULT ON A FEMALE with Plaintiff as the victim in the case. [Doc 37, Page 21]. Exhibit 4.[4] However, before the matter could reach any resolution for Plaintiff, the ASSAULT ON A FEMALE case was disposed of on August 2, 2023, because Branch was deemed deceased. [Doc 37, Page 22]. Exhibit 5.[5]

---

[4] Exhibit 4 is of Branch's Criminal Summons for the Assault on a Female case that Plaintiff was a victim in. The Criminal Summons is under File No. 22CR286228 and was issued by Magistrate Monica Jernigan on September 3, 2022.

[5] Exhibit 5 is of the Motion and Order of Abatement for Plaintiff's Assault on a Female case against Branch under File No. 22CR286228.

## III. ARGUMENTS

As will be demonstrated, the Motion to Dismiss filed by the Judicial Defendants should be denied, because this Court has jurisdiction in this matter, and Plaintiff's Complaint not only meets but exceeds the standards governing the form of a complaint as set forth in The Federal Rules of Civil Procedure.

"In considering the motion, courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed."" *La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citation omitted).*

The Federal Rule of Civil Procedure provides that a pleading that states a claim for relief must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought, which may include relief in the alternative or different types of relief. *Fed. R. Civ. P. 8(a)(2).*

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *CRM Suite Corp v GM Company |*
*USFLMD | 8:20-cv-00762 | 3/10/21.*

Plaintiff's complaint contains short and plain statements of the grounds
for the courts jurisdiction. Her complaint contains short and plain statements
of fifteen total claims showing that she is entitled to relief. Her complaint also
contains a demand for several different types of relief sought. Plaintiff's claims
have facial plausibility because her complaint contains factual content that
allows the court to draw the reasonable inference that the defendants are liable
for the misconduct alleged.

"The pleadings of pro se litigants are "liberally construed" and held to a
less exacting standard as those complaints drafted by attorneys." *Tannenbaum
v. United States, 148 F. 3d 1262, 1263 (11th Cir. 1998).* This liberal rule gives effect
to the federal policy in favor of resolving cases on their merits, rather than
disposing of them on technicalities. *Lemon v. MYERS BIGEL, PA, (2019).*

A. RESPONSE TO DEFENDANT'S ARGUMENT REGARDING ABSOLUTE
JUDICIAL IMMUNITY

Judicial immunity is overcome in only two circumstances: (1) "a judge is
not immune from liability for nonjudicial actions, ie, actions not taken in the
judge's judicial capacity": and (2) "a judge is not immune for actions, though
judicial in nature, taken in the complete absence of all jurisdiction." *Miller v.
Primo, (2022).* Whether an act by a judge is a "judicial" one relates "to the

nature of the act itself, ie, whether it is a function normally performed by a judge, and to the expectations of the parties, ie, whether they dealt with the judge in [her] judicial capacity." *Bradley v. Levin, (2015).* "Administrative decisions, even though they may be essential to the very functioning of the courts, have not... been regarded as judicial acts." *Blackmon v. Adams County, (2022).*

The Defendants stated that "Plaintiff alleges Magistrate Oates' issuance of an arrest warrant against Plaintiff for injury to personal property and setting a secured bond was unlawful capacity." *[Doc 41-1, Page 9].* However, the Defendants' statement is false, because Plaintiff's allegations were that "Defendant OATES co-conspired with Defendants WARREN and LINDSAY to seek, issue, and serve a Warrant for Arrest for Plaintiff, alleging the criminal offense of "INJURY TO PERSONAL PROPERTY", while they each knew the warrant affidavit contained false statements, omitted relevant information, and was unsupported by probable cause." *[Doc 37, Page 26].*

Aside from the traditional acts that Magistrate OATES performed in proceedings in which she had authority to do so, such as making decisions on bail, Magistrate OATES also took actions that were not functions normally performed by a Magistrate, more specifically, by destroying the criminal complaint form that Plaintiff had submitted to OATES against Branch.

Magistrate OATES is not entitled to judicial immunity because she took actions that were performed outside of her judicial capacity.

B. RESPONSE TO DEFENDANT'S ARGUMENT REGARDING MAGISTRATE OATES' FAILURE TO ISSUE PROCESS AGAINST BRANCH

In numerous cases, the Court has referred to the necessity that warrants be issued by a "judicial officer" or a "magistrate." *Lo-Ji Sales v. New York, 442 U.S. 319 (1979)*. "He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search." *Shadwick v. City of Tampa, 407 U.S. 345, 354 (1972)*. "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Snyder v. County of Nassau, (2021)*.

Given the totality of the circumstances set forth in the affidavit, Plaintiff adequately described circumstances establishing a probability that Branch posed an immediate threat to the safety of Plaintiff. This is clear by the allegations Plaintiff had stated within her Complaint, such as, "[Branch] communicated threats to me by stating, "I'll kill you and the baby inside of you," and "If you show up to my house I'll burn it to the ground with you inside of it," and came towards me with my ax raised like he was about to hit me with it, however I was able to get in my vehicle and drive away before he could. He stole the ax, valued at $80." *[Doc 37, Page 7]*.

There is prejudice suffered by Plaintiff because the only criminal offense that Branch ended up being charged with was ASSAULT ON A FEMALE, when in technicality, Branch should have been charged with 3 additional offenses: BATTERY ON AN UNBORN CHILD, COMMUNICATING THREATS, and MISDEMEANOR LARCENY. The importance of the criminal complaint form would have been paramount to Plaintiff's case against Branch, had the form not been destroyed by Magistrate OATES.

C. RESPONSE TO DEFENDANT'S ARGUMENT REGARDING THE ELEVENTH AMENDMENT BARR TO THE OFFICIAL CAPACITY CLAIMS AGAINST MAGISTRATE OATES AND JUDGE COWAN

In *Scheuer v. Rhodes*, the Court held that plaintiffs were not barred by the Eleventh Amendment or other immunity doctrines from suing the governor and other officials of a state alleging that they deprived plaintiffs of federal rights under color of state law and seeking damages, when it was clear that plaintiffs were seeking to impose individual and personal liability on the officials. *416 U.S. 232 (1974).*

In *Hafer v. Melo*, the Supreme Court held that state officers may be personally liable for damages under Section 1983 based upon actions taken in their official capacities. The court held that the state officer's potential liability is not limited to acts under color of state law that are outside their authority or not essential to operation of state government, but also extends to acts within

their authority and necessary to performance of governmental functions and Eleventh Amendment immunity does not erect barriers against suits to impose individual and personal liability on state officers under Section 1983. A similar rule would apply to local officials. *502 U.S. 21, 112 S.Ct. 358 (1991).*

In dicta, it has been held by the Courts that suits could be pursued against officers of a state when their action violated the Constitution or federal law. The Court stated: "Nor need it be apprehended that the construction of the eleventh Amendment, applied in this case, will in anywise embarrass or obstruct the execution of the laws of the United States in cases where officers of a State are guilty of acting in violation of them under color of its authority... Nothing can be interposed between the individual and the obligation he owes to the Constitution and the laws of the United States, which can shield or defend him from their just authority... If therefore, an individual acting under the assumed authority of a State, as one of its officers, and under color of its laws, comes into conflict with the superior authority of a valid law of the United States, he is stripped of his representative character, and subjected in his person to the consequences of his individual conduct." *Ex parte Ayers, 123 U.S. 443, 507 (1887).*

Plaintiff seeks to sue Magistrate OATES and Judge COWAN in both their individual and official capacities, not just their official. At the very minimal, the Court has jurisdiction to address Plaintiff's individual-capacity claims over

Defendants OATES and COWAN for actions they each took under color of state law.

The Ex parte Young exception to a State's sovereign immunity "rests on the premise that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *SLATER EX REL. MAUCK v. Clarke, (2013)*. Whether a litigant's claim falls under the Ex parte Young exception to the Eleventh Amendment's bar against suing a state is a "straightforward inquiry" that asks "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Pasternak v. Baines, (2006)*.

A First Amendment Retaliatory-Arrest claim for ongoing chilling effect is the type of ongoing violation for which the Eleventh Amendment does not bar redress. The violations of federal law are considered ongoing when taking into consideration the risk for potential harm in the future. Retaliatory arrest claims should be seen as a content-based regulation and a type of prior restraint. Courts should take into account both the timeliness of the speech and the chilling effect that the arrest may have, preventing any subsequent speech that might have been broadcast.

"[A] declaratory judgment action is appropriate [1] `when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and...[2] when it will terminate and afford relief from the uncertainty,

insecurity, and controversy giving rise to the proceeding.'" *JACOBS ENGINEERING GROUP, INC. v. Consolidated Rail Corporation, (2022)*. Plaintiff's request for declaratory relief seeks this Court to declare that "Plaintiff's constitutional rights have been violated." Plaintiff also stated in her complaint that she seeks "Prospective Relief for all relief other than monetary damages," among the forms of relief sought. Plaintiff's request for injunctive relief seeks this Court to "correct violations and to ensure non-reoccurance of further violations of Plaintiff's rights." *[Doc 37, Page 47]*.

Aside from declaratory and injunctive relief, in her Complaint Plaintiff listed the forms of relief sought against the Defendants in their individual capacities, which include a combination of compensatory, punitive, nominal, and presumed damages, to be awarded at the Court or jury's discretion. *[Doc 37, Pages 47-48]*.

In response to the defendants argument that "Plaintiff alleges that Magistrate Oates violated her constitutional rights when she failed to issue charges requested by Plaintiff, and issued process against Plaintiff for Injury to Personal Property," *[Doc 41-1, Page 15]*, the constitutional rights that Plaintiff alleged Magistrate OATES violated included OATES' involvement in the retaliatory and false arrest of Plaintiff, the abuse of process and malicious prosecution regarding so, the harassment and intimidation towards Plaintiff, and the violations to Plaintiff's liberty interest and equal protection rights.

In response to the defendants argument that "Plaintiff alleges that Judge Cowan violated her constitutional rights when she denied her motion to dismiss and found her guilty at trial," *[Doc 41-1, Page 15]*, the constitutional rights that Plaintiff alleged Judge COWAN violated included retaliatory arrest and wrongful conviction of Plaintiff, the harassment and intimidation towards Plaintiff, and the violations to Plaintiff's equal protection rights.

D. RESPONSE TO DEFENDANT'S ARGUMENT THAT SECTION 1983 CANNOT BE USED TO VINDICATE RIGHTS ARISING UNDER STATE LAW.

This Court may exercise supplemental jurisdiction over these state claims because they stem from the same factual nexus as the federal claims. *Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995)*. "Once the jurisdiction of a court or administrative agency attaches, the general rule is that it will not be ousted by subsequent events." *Steensland v. ALA. JUDICIAL INQUIRY COM'N, (2012)*. Moreover, "federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Safe Streets Alliance v. Hickenlooper, (2017)*.

Local governmental officials who violate constitutional rights act "under color of law" for purposes of Section 1983, even if their conduct was contrary to state law. For violations of constitutional rights against local governmental officials and employees, Section 1983 provides a federal remedy in federal court because the state governments and courts, "by reason of prejudice,

passion, neglect, intolerance or otherwise" were unwilling to enforce the due process rights guaranteed by the 14th Amendment. *Monroe v. Pape, 365 U.S. 167 (1961).*

Even if a plaintiff's claim arises under state law: its case might still `arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties. *Ament v. PNC Nat. Bank, (1992).*

### E. CLAIM TEN: OBSTRUCTION OF JUSTICE

According to N.C. Gen. Stat. 15A-304 (Warrant for arrest), "A judicial official may issue a warrant for arrest only when he is supplied with sufficient information, supported by oath or affirmation, to make an independent judgment that there is probable cause to believe that a crime has been committed and that the person to be arrested committed it. The information must be shown by one or both of the following: 1) Affidavit; or 2) Oral testimony under oath or affirmation before the issuing official." Note that the requirement that the information be shown by either an affidavit or oral testimony under oath, or both, is solely for the issuance of a warrant for arrest. Yet considering the charges were citizen-initiated by Plaintiff, Magistrate OATES would have issued a criminal summons for Branch, not a warrant for arrest.

According to N.C. Gen. Stat. 15A-303 (Criminal summons), a criminal summons consists of a statement of the crime of which the person to be summoned is accused, and an order directing that the person so accused appear and answer to the charges made against him. The statute states, "No criminal summons is invalid because of any technicality of pleading if the statement is sufficient to identify the crime." A criminal summons is based upon a showing of probable cause supported by oath or affirmation. The showing of probable cause for the issuance of a criminal summons, and the record thereof, is the same as provided in G.S. 15A-304(d) for the issuance of a warrant for arrest.

According to North Carolina General Statute Section 15A-832.1, "In issuing a pleading as provided in G.S. 15A-921, for any misdemeanor offense against the person based on testimony or evidence from a complaining witness rather than from a law enforcement officer, a judicial official shall record the defendant's name and the victim's name, address, and telephone number electronically or on a form separate from the pleading and developed by the Administrative Office of the Courts for the purpose of recording that information, unless the victim refuses to disclose any or all of the information, in which case the judicial official shall so indicate. A judicial official issuing a pleading for any misdemeanor offense against the person based on testimony or evidence from a complaining witness rather than from a law enforcement

officer shall deliver the court's copy of the warrant and the victim–identifying information to the office of the clerk of superior court by the close of the next business day."

### F. CLAIM ELEVEN: SPOLIATION OF EVIDENCE

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Brown v. Coleman, (2009)*. "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Durham v. County of Maui, (2010)*. Destruction of evidence is willful spoliation if the party had "some notice that the documents were potentially relevant to the litigation before they were destroyed." *DEERPOINT GROUP, INC. v. AGRIGENIX, LLC, (2022)*.

The courts have taken several approaches to spoliation of evidence. Some courts have approached it as a matter within their inherent powers. *See Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 126–27 (S.D. Fla. 1987)*. Other courts have avoided characterizing the destruction of evidence as spoliation but have nonetheless addressed the issue under equitable principles by attempting to remedy the prejudice suffered by the complaining party.

In marshaling the evidence on Magistrate OATES' intent regarding the disappearance of the criminal complaint form, the following facts militate in

favor of a finding that the form was intentionally and deliberately destroyed: Magistrate OATES analyzed the evidence before it was destroyed; Magistrate OATES had knowledge that the form included viable evidence that would have led to criminal charges against Branch and that the form would become material at some point in the future; Magistrate OATES had an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in Plaintiff's case against Branch, yet the form disappeared under her supervision.

G. CLAIM TWELVE: VIOLATION OF VICTIMS RIGHTS – North Carolina Constitution Article 1, Section 37

In accordance with North Carolina General Statutes § 15A-830.5 (Victim's Rights), a victim of crime shall be treated with dignity and respect by the criminal justice system. A victim has the following rights: The right, upon request, to reasonable, accurate, and timely notice of court proceedings of the accused; The right, upon request, to be present at court proceedings of the accused; The right to be reasonably heard at court proceedings involving a plea that disposes of the case or the conviction, sentencing, or release of the accused; The right to receive restitution in a reasonably timely manner, when ordered by the court; The right to be given information about the crime, how the criminal justice system works, the rights of victims, and the availability of services for victims; The right to present the victim's views and concerns in

writing to the Governor or agency considering any action that could result in the release of the accused, prior to such action becoming effective; The right to reasonably confer with the district attorney's office.

In accordance with North Carolina General Statutes § 15A-833 (Evidence of victim impact), a victim has the right to offer admissible evidence of the impact of the crime, which shall be considered by the court or jury in sentencing the defendant. The evidence may include the following: A description of the nature and extent of any physical, psychological, or emotional injury suffered by the victim as a result of the offense committed by the defendant; An explanation of any economic or property loss suffered by the victim as a result of the offense committed by the defendant; A request for restitution and an indication of whether the victim has applied for or received compensation under the Crime Victims Compensation Act.

In accordance with North Carolina General Statutes § 15A-825 (Treatment due victims and witnesses), to the extent reasonably possible and subject to available resources, the employees of law enforcement agencies, the prosecutorial system, the judicial system, and the correctional system should make a reasonable effort to assure that each victim and witness within their jurisdiction: Is provided information about available protection from harm and threats of harm arising out of cooperation with law enforcement and prosecution efforts, and receives such protection; Is provided, whenever

practical, a secure waiting area during court proceedings that does not place the victim in close proximity to defendants; Is informed of the procedures to be followed to apply for and receive any appropriate witness fees or victim compensation; Is informed of the right to be present throughout the entire trial of the defendant, subject to the right of the court to sequester witnesses; Is given the opportunity to be present during the final disposition of the case or is informed of the final disposition of the case, if the victim or witness has requested to be present or be informed; Is given the opportunity to prepare a victim impact statement for consideration by the court; Is informed that civil remedies may be available and that statutes of limitation apply in civil cases.

That is all in addition to the Victim's Rights in the North Carolina Constitution under Article 1, Section 37 that Magistrate OATES violated.

Plaintiff's statements in the criminal complaint form she filled out were sufficient in identifying the suspect's crimes, therefore gave viable cause for any reasonable magistrate to issue charges against Branch. Magistrate OATES caused substantial interference with Plaintiff's victim's rights, by preventing a fair and impartial investigation of the violent incident that Plaintiff was a victim of.

In this particular case, Plaintiff asks the court to take into consideration that she was 16 weeks pregnant at the time of the assault. Also, the suspect and Plaintiff had a personal relationship. See also G.S. 15A-1340.16(d)(15)

(aggravating factor at felony sentencing for the defendant to have taken advantage of a position of trust and confidence, including a domestic relationship, in committing the offense).

H. CLAIM FIFTEEN: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

"To prevail on such a claim, a plaintiff must establish that there was `extreme and outrageous conduct,' that the conduct was undertaken with `intent to cause, or disregard of a substantial probability of causing, severe emotional distress,' and that the conduct did in fact cause severe emotional distress." *CENTER FOR DISCOVERY, INC. v. DP, (2018).* The actions of Defendants OATES and COWAN consist of extreme, outrageous, and bullying conduct, and their conduct would be considered 'atrocious' and 'utterly intolerable' to any 'reasonable' person in a civilized society. The actions of the Defendants were motivated by malice and were deliberately intended by the Defendants to cause, and did in fact cause, severe emotional distress and mental anguish to Plaintiff. The emotional distress is considered ongoing because there is the threat of future harm.

IV. CONCLUSION

For the foregoing reasons, and all the other reasons discussed in the Complaint, Plaintiff respectfully requests that the Court deny the Judicial Defendants' Motion to Dismiss.

Dated: _July 12, 2024_

_Mackenzie Elaine Brown_

Mackenzie Elaine Brown,
Plaintiff & Pro Se Litigant
158 Haven Rd, East Flat Rock, NC 28726
P: 828-489-5080
E: mackenzieb0897@gmail.com

# CERTIFICATE OF SERVICE

I certify that I filed the foregoing to the U.S. Clerk of Courts Office, and mailed

a copy to the following attorney's of the Defendants:


Sean F. Perrin
Womble Bond Dickinson (US) LLP
301 S. College Street, Ste. 3500
Charlotte, North Carolina, 28202
Telephone: 704-331-4992
Facsimile: 704-338-7814
sean.perrin@wbd-us.com
Counsel for Defendants Henderson County Sheriff's Office, Robert Jordan
Warren, Michael Scott Lindsay, Crystal D. Landers, Johnny E. Duncan Jr.,
Bradley R. Reece, and Brittany Nicole Maybin.

&

Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6800
Fax: (919) 716-6755
eobrien@ncdoj.gov
State Bar No. 28885
Counsel for Defendants Oates & Cowan.

Dated: _July 12, 2024_

_Mackenzie Elaine Brown_

Mackenzie Elaine Brown,
Plaintiff & Pro Se Litigant
158 Haven Rd, East Flat Rock, NC 28726
P: 828-489-5080
E: mackenzieb0897@gmail.com