IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-00270-MR-WCM

| | | |
|---|---|---|
| MACKENZIE ELAINE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| HENDERSON COUNTY | ) | |
| SHERIFF'S OFFICE; | ) | |
| ROBERT JORDAN WARREN, | ) | |
| *Sheriff Deputy with Henderson* | ) | |
| *County Sheriff's Office - Patrol Division*; | ) | |
| MICHAEL SCOTT LINDSAY, | ) | |
| *Sheriff Deputy with Henderson County* | ) | |
| *Sheriff's Office - Patrol Division*; | ) | |
| CRYSTAL D. LANDERS, | ) | |
| *Sheriff Deputy with Henderson County* | ) | |
| *Sheriff's Office - Patrol Division*; | ) | |
| JOHNNY E. DUNCAN, JR., | ) | |
| *Henderson County Director of* | ) | |
| *Technical Services/Public* | ) | |
| *Information Officer*; | ) | |
| BRADLEY R. REECE, | ) | |
| *Animal Enforcement Officer with* | ) | |
| *Henderson County Sheriff's Department*; | ) | |
| BRITTANY NICOLE MAYBIN, | ) | |
| *Detention Facility Officer with* | ) | |
| *Henderson County Detention Facility*; | ) | |
| SUSAN N. OATES, | ) | |
| *Magistrate with North Carolina* | ) | |
| *Administrative Office of the Courts*; and | ) | |
| EMILY GREENE COWAN, | ) | |
| *District Court Judge with the* | ) | |
| *North Carolina Consolidated* | ) | |
| *Judicial Retirement System,* | ) | |
| | ) | |
| Defendants. | ) | |

1

This matter is before the Court on the following motions which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation:

1. A Motion to Dismiss Amended Complaint (Doc. 39) filed by the Henderson County Sheriff's Office (the "HCSO"), Henderson County Sheriff Deputies Robert Warren ("Deputy Warren"), Michael Lindsay ("Deputy Lindsay"), and Crystal Landers ("Deputy Landers"), HCSO Public Information Officer Johnny Duncan, Jr. ("Officer Duncan"), Henderson County Animal Enforcement Officer Bradley Reece ("Officer Reece"), and Henderson County Detention Facility Officer Brittany Maybin ("Officer Maybin") (collectively, the "HSCO Defendants"), and

2. A Motion to Dismiss Amended Complaint (Doc. 41) filed by Susan N. Oates, a North Carolina magistrate ("Magistrate Oates"), and Emily Greene Cowan, District Court Judge (retired) ("Judge Cowan") (collectively, the "Judicial Defendants").

## I.    Procedural History

On September 14, 2023, Mackenzie Brown ("Plaintiff"), proceeding *pro se*, filed her original Complaint. She filed an Amended Complaint on May 13, 2024. Doc. 37.[1]

---

[1] Plaintiff names the Judicial Defendants and each of the individual HCSO Defendants in their individual and official capacities.

On May 24, 2024, the HCSO Defendants filed their Motion to Dismiss (the "HCSO Defendants' Motion to Dismiss," Docs. 39, 40). Plaintiff responded and the HCSO Defendants replied. Docs. 43, 46.

On May 28, 2024, the Judicial Defendants filed their Motion to Dismiss (the "Judicial Defendants' Motion to Dismiss," Docs. 41, 41-1). Plaintiff responded. Doc. 47. The Judicial Defendants did not reply.

## II.    Plaintiff's Allegations and Factual Background

From the Amended Complaint and the other materials submitted, the factual background is as follows:

On September 26, 2021, Plaintiff was the victim of a domestic violence incident involving Dillion Branch ("Branch"). Doc. 37 at 7. Plaintiff left her residence, called 911, and was instructed to "go to the Magistrate's Office and take out assault charges" against Branch. Id.

On October 1, 2021, Plaintiff went to the Henderson County Magistrate's Office. On her way inside, Plaintiff observed an HCSO vehicle that was wrapped in pink film and was being displayed for a Breast Cancer Awareness event (the "Vehicle"). The Vehicle was parked in the HCSO parking lot. It had "at least 5 black Sharpie markers laid out on the trunk," and there were "several indications of signage" on the Vehicle. Id. at 8. Plaintiff proceeded to the Magistrate's Office, where Magistrate Oates was on duty, and filled out a criminal complaint regarding Branch. Id.

3

As she was leaving the Magistrate's Office, Plaintiff noticed that two of her acquaintances were standing near the Vehicle, and that one of them was "doodling illustrations on the upper midsection" of the Vehicle. Id. at 9. Plaintiff "observed that there were not any rules, regulations, directions, instructions, or clues posted in any way indicating what the public could, could not, should, or should not write." Id. Plaintiff wrote "12 SUX" on the Vehicle and went home. Id. at 9–10.[2]

About an hour later, Deputy Warren and Deputy Landers knocked on Plaintiff's door. Id. at 10. When Plaintiff opened the door, Deputy Warren and Deputy Landers "aggressively yanked" Plaintiff into her driveway and handcuffed her. Id. The deputies accused Plaintiff of resisting arrest and called her things such as "a piece of sh**." Id. at 11. At the time of her arrest, several law enforcement vehicles, including the Vehicle, were in or around Plaintiff's driveway, and Deputy Warren took pictures of Plaintiff standing, handcuffed, in front of the Vehicle. Id. at 10–11.

Plaintiff was then transported in the Vehicle to the Henderson County Detention Facility at approximately 5:20 p.m. Id. at 11; Doc. 40-3. Plaintiff was subsequently served with a warrant for her arrest (the "Warrant"). Plaintiff

---

[2] The parties appear to agree that "12 SUX" was a negative comment about the HCSO.

alleges that the Warrant was requested by Deputy Warren and Deputy Lindsay and had been signed by Magistrate Oates. It stated:

> I, the undersigned, find that there is probable cause to believe that on or about [10/1/2021] … the defendant … unlawfully and willfully did wantonly injure personal property, HENDERSON COUNTY SHERIFF'S OFFICE PATROL VEHICLE, CAR NUMBER SH 208 … the property of HENDERSON COUNTY SHERIFF'S OFFICE. The damage caused was in excess of $200.00.

> Doc. 40-2.[3]

Plaintiff was detained, and a secured bond of $2,000.00 was set. While Plaintiff was at the detention facility, Officer Maybin told her that she "might have to stay the entire weekend because no bondsman is willing to come get you anymore." Doc. 37 at 13–14. When Plaintiff asked why, Officer Maybin stated that "we told them what you wrote and they respect us so they don't want to come get you now." Id. at 14. Plaintiff also alleges that Officer Maybin personally answered the phone or directed another officer to answer the phone to coerce and/or persuade bail agencies to deny Plaintiff assistance. Id. at 29.

---

[3] Plaintiff and the HCSO Defendants have submitted various documents related to Plaintiff's arrest and subsequent criminal proceedings. See Doc. 40-2 – 40-6, Docs. 43-2 and 52. These documents are referenced in the Amended Complaint sufficiently, or are matters of public record, such that they may be considered. See Epcon Homestead, LLC v. Town of Chapel Hill, 62 F.4th 882, 885 (4th Cir. 2023) (citing U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014)).

Nonetheless, Plaintiff posted bond and was released from custody at 8:20 p.m. that evening. Id.

Also on October 1, 2021, Officer Duncan created a post on the HCSO Facebook page (the "Post") that included a photo of Plaintiff handcuffed in front of the Vehicle with the following caption:

> Now hear this!! This morning the Henderson County Sheriff's Office along with AdventHealth unveiled a pink patrol car for Breast Cancer Awareness Month. The intention of this car was to honor and recognize those individuals who have fought or are currently fighting Breast Cancer. Several hours after unveiling this car Mackenzie Elaine Brown 24 years of age from East Flat Rock decided it would be a good idea to show her respect by coming to the Sheriff's Office and vandalizing this tribute car. Mackenzie didn't put too much thought into her actions or she would have known the Law Enforcement Center is under 24/7 video surveillance. Within less than an hour our officers had identified her and obtained a warrant for her arrest. Seeing how Mackenzie is such a supporter of our pink patrol car we decided to allow her to be the first person to ride in the back seat of it and we also gave her a complimentary stay in the ole gray bar hotel. Mackenzie has been charged with Injury to Personal Property and her bond was set at $2,000.00 secured.
>
> #PlayStupidGamesWinStupidPrizes
> #OurSheriffDoesntPlay      #NotInHendersonCounty
> #DontDisrespectThoseWhoHaveFoughtBreastCancer
> #EnjoyYourVisitBackToJail
>
> Id. at 14–15.

Information from the Post was republished numerous times online by other sources. Id. at 15–16. Plaintiff's friends and family members requested that the Post be removed but "their requests were ignored." Id. at 16.

The next morning, on October 2, 2021, Officer Reece "showed up at [Plaintiff's] house and did an extremely random and unexpected dangerous dog inspection while [Plaintiff] was asleep." Id. Plaintiff subsequently found a notice imposing a $550 fine posted on her door (the "Citation"). Id. After calling Animal Enforcement, Plaintiff was told: "We can take away the $550 charge, but we'll have to mark that as your dog's strike 2, and on strike 3, we'll have to put her down." Id. at 17.

On March 24, 2022, Plaintiff appeared with her public defender before Judge Cowan for a bench trial on the charge of injury to personal property. Id. Deputy Warren and Deputy Lindsay both testified and acknowledged "that HCSO was allowing the entire public community to add messages onto the pink vehicle for their event that day, [and] that there were no rules or regulations or instructions or directions posted in any way as to what could or could not be written on it." Id. Both deputies also explained that they had attempted to remove Plaintiff's writing from the Vehicle, but ultimately had to use a piece of vinyl to cover it. Id. at 18.

Judge Cowan found Plaintiff guilty, and Plaintiff appealed to Henderson County Superior Court. Id.

7

"In April of 2022," Plaintiff went to the Henderson County Magistrate's Office to ask about the status of the criminal complaint she had filled out against Branch on October 1, 2021. Id. at 19. Magistrate Monica Jernigan ("Magistrate Jernigan") informed Plaintiff that the complaint had not been filed and that she was unable to locate any records related to it. Id. at 19.

On May 26, 2022, Plaintiff returned to the Magistrate's Office to ask Magistrate Oates about the missing criminal complaint. Magistrate Oates appeared "very panicked, uncomfortable, dismissive, and evasive" and told Plaintiff that she needed to leave and come back when a different magistrate was on duty. Id. at 21.

On September 3, 2022, Plaintiff filled out a second criminal complaint against Branch regarding the alleged September 26, 2021 incident. Id.[4]

On October 25, 2022, the injury to personal property case against Plaintiff was dismissed, based on the State's determination that it was not in its interest to prosecute. Id. at 23; Doc. 40-6.

## III. Discussion

### A. The Judicial Defendants' Motion to Dismiss

Plaintiff has asserted the following claims against Magistrate Oates and/or Judge Cowan pursuant to 42 U.S.C. §1983: (1) First Amendment

---

[4] Branch died subsequently on June 16, 2023 and the "case was disposed of...." Id. at 22; Doc. 47-7.

8

retaliation; (2) unlawful seizure/false arrest; (3) malicious prosecution; (4) "harassment and intimidation"; (5) abuse of process; (6) violation of liberty interest; (7) wrongful conviction; and (8) equal protection. Plaintiff also asserts a conspiracy claim, an obstruction of justice claim, a claim for spoliation, a claim for violation of "Victim's Rights" under the North Carolina Constitution, and a claim for intentional infliction of emotional distress.

The Judicial Defendants contend, among other things, that all of Plaintiff's claims against them are barred by Eleventh Amendment immunity and/or absolute judicial immunity.

## 1. Eleventh Amendment Immunity (Official Capacity)

"The Eleventh Amendment bars suits brought in federal courts by a state's own citizens or the citizens of another state to the extent the suit seeks retrospective relief, including damages, against an unconsenting state." Das v. Mecklenburg Cnty. Sheriff Off./Dep't, No. 3:22-CV-00561-FDW-DCK, 2023 WL 7116849, at *6 (W.D.N.C. Oct. 27, 2023); see also Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001) ("The United States Supreme Court has extended Eleventh Amendment immunity to suits brought "by citizens against their own States."); U.S. Const. amend. XI.

"Because a suit against a state official in his or her official capacity 'is no different from a suit against the State itself,' the Eleventh Amendment also bars suits brought in federal court that seek monetary relief from state officials

9

in their official capacity." <u>Das</u>, 2023 WL 7116849, at \*6 (quoting <u>Will v. Mich.</u> <u>Dep't of State Police</u>, 491 U.S. 59, 71 (1989) and citing <u>Biggs v. Meadows</u>, 66 F.3d 56, 61 (4th Cir. 1995)).

Here, Plaintiff concedes that the Judicial Defendants are state officials. <u>See also</u> <u>Das</u>, 2023 WL 7116849, at \*7.

Plaintiff argues, though, that the exception set forth in <u>Ex Parte Young</u>, 209 U.S. 123 (1908) applies. That exception, however, "provides *only* for prospective injunctive relief from a continuing violation of federal law, and not for declaratory relief for a past violation of federal law." <u>Int'l Coal. for Religious</u> <u>Freedom v. Maryland</u>, 3 F. App'x 46, 50 (4th Cir. 2001) (per curiam) (unpubl.) (emphasis in original); <u>see also</u> <u>Hill v. McCrory</u>, No. 1:16-cv-00259-MOC-DLH, 2016 WL 5890067, at \*3 (W.D.N.C. Oct. 7, 2016) (finding that retrospective relief "is non-justiciable in this court as a matter of law").

Because Plaintiff seeks a declaration that her constitutional rights have been violated, as well as compensatory and punitive damages stemming from those alleged violations, <u>Ex Parte Young</u> does not apply, and Plaintiff's claims against the Judicial Defendants in their official capacities should be dismissed for lack of subject matter jurisdiction. <u>See</u> <u>MciLwain v. Hensley</u>, No. 1:23-cv-295-MOC, 2024 WL 3708871, at \*1 (W.D.N.C. Aug. 7, 2024) ("Where a defendant raises either Eleventh Amendment or sovereign immunity in seeking dismissal of a claim, that motion is properly considered pursuant to

10

Rule 12(b)(1) of the Federal Rules of Civil Procedure, as the defendant is contending that the court lacks subject matter jurisdiction over the plaintiff's claim.") (collecting cases).

## 2. Absolute Judicial Immunity (Individual Capacity)[5]

Judicial immunity "provides judges with immunity from suit, not just an ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991). Judicial immunity will apply if the action at issue: (1) was not done "in the clear absence of all jurisdiction" and (2) was a "judicial act." King v. Myers, 973 F.2d 354, 356-357 (4th Cir. 1992); see also Wall v. Gulledge, 1:22-cv-31, 2024 WL 4503823, at *5 (Oct. 16, 2024) (same). Judicial immunity exists even where the acts complained of "were allegedly done either maliciously or corruptly." King, 973 F.2d at 356.

Here, Plaintiff does not allege that any action taken by either Magistrate Oates or Judge Cowan was done in the "clear absence of all jurisdiction." Therefore, question is whether the acts complained of were "judicial acts."

To the extent Plaintiff's claims are based on Magistrate Oates' issuance of the Warrant or Judge Cowan's work in connection with Plaintiff's trial, her

---

[5] The Judicial Defendants argue that all claims against them (in both their official and individual capacities) should be dismissed based on absolute judicial immunity. As discussed above, the undersigned recommends dismissal of the claims against the Judicial Defendants in their official capacities based on Eleventh Amendment immunity. Therefore, the undersigned does not reach the question of whether absolute judicial immunity would also bar Plaintiff's official capacity claims.

claims are barred because those acts were judicial acts. See e.g., Foster v. Fisher, No. 1:14-cv-292-MR-DSC, 2016 WL 900654, at *10 (W.D.N.C. Mar. 9, 2016) (noting that "North Carolina courts have found that a magistrate performs a judicial act when she issues a warrant") aff'd 694 F. App'x 887 (4th Cir. 2017); Hedgepeth v. Wilkes C., No. 3:12–cv–262–RJC, 2012 WL 2092853, at *4 (W.D.N.C. June 11, 2012) ("Plaintiff's action against [the state magistrate defendant] is simply not cognizable because issuing orders for arrest and making decisions on bail are actions which fall naturally within a magistrate's judicial capacity.").

Similarly, Magistrate Oates' decision whether to initiate criminal process against Branch following Plaintiff's submission of the October 1, 2021 complaint was a judicial act, even if that decision was motivated by malice or ill will toward Plaintiff. King, 973 F.2d at 356; Hemby v. Off. of the Dist. Att'y, No. 4:19-CV-84-BO, 2019 WL 2595586, at *4 (E.D.N.C. June 5, 2019) ("the decision of the magistrate to issue a warrant is a protected judicial act"); Foust v. Hughs, 21 N.C.App. 268, 270 (1974) ("A magistrate who decides whether to issue a warrant is performing a judicial act."); Cole v. Summey, 329 F. Supp. 2d 591, 595 (M.D.N.C. 2004) ("[T]he Fourth Circuit has found that a state magistrate is entitled to judicial immunity for his acts in issuing, or failing to issue, criminal arrest warrants.") (citing Timmerman v. Brown, 528 F.2d 811, 813–14 (4th Cir. 1975)); see also Harris v. Salley, 339 F. App'x 281, 283 (4th

Cir. 2009) (a citizen "does not have a constitutional right to institute criminal proceedings against [another person] or to sue the defendants for failing to use their authority to do so").

Plaintiff also contends, though, that Magistrate Oates destroyed the criminal complaint that Plaintiff submitted on October 1, 2021 and that such action was not a function "normally performed by a Magistrate." Doc. 47-1 at 14; see also Doc. 37 at 20 ("Magistrate Jernigan and I reached the conclusion that Defendant OATES intentionally did not issue any criminal charges against [Branch], and had destroyed any evidence of the complainant form I had submitted").

The Supreme Court has explained that "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Mireles, 502 U.S. at 12 (quoting Stump v. Sparkman, 435 U.S. 349 (1978)).

Here, Plaintiff clearly dealt with Magistrate Oates in her judicial capacity on October 1, 2021, and Magistrate Oates' decision how to respond to Plaintiff's complaint implicates a function normally performed by a judge. See Mireles, 502 U.S. at 12-13 (finding judicial immunity applied despite allegation that judge directed police officers to bring an individual into court using excessive force and explaining that "the relevant inquiry is the 'nature' and

13

'function' of the act, not the 'act itself.' In other words, we look to the particular act's relation to a general function normally performed by a judge, in this case the function of directing police officers to bring counsel in a pending case before the court."); Holloway v. Walker, 765 F.2d 517, 522 (5th Cir. 1985), cert. denied, 474 U.S. 1037 (1985) (allegation that judge performed judicial acts pursuant to a bribe or conspiracy did not overcome absolute judicial immunity); Lund v. Cowan, 5 F.4th 964, 970-972 (9th Cir. 2021) (holding that judicial immunity applied to state court judge's "troubling" and "questionable" comments made during settlement conference); Rudd v. Pittman, No. 21-1354, 2022 WL 10248064 at *3 (6th Cir. April 25, 2022) (finding that a judge's "instruct[ions to] his staff to refrain from scheduling hearings on relief that [plaintiff] sought, attempt[s] to remove certain filings from the case file, declin[ing] to hold a hearing on [the plaintiff's] motion for recusal, and improperly correspond[ing] with the judge to whom the recusal motion had been assigned" were judicial, rather than administrative, acts); Guion v. Marsh, No. 6:18-cv-01609-DCC, 2019 WL 1771736, at *2 (D.S.C. April 23, 2019) (defendant was entitled to judicial immunity despite allegation that judge signed orders that she neither read nor wrote); cf. Yoder v. Workman, 224 F.Supp.2d 1077, 1080 (S.D. W.Va. 2002) (judge's publication of a press release on the court's website to explain and elaborate on her recusal notice was not a judicial act); Wall v. Gulledge, No. 1:22-cv-31, 2024 WL 4503823 at *7 (M.D.N.C. Oct. 16, 2024) (defendant

14

was not entitled to judicial immunity for alleged act of providing false statements to a different judge to supply probable cause for plaintiff's arrest because such acts were done in defendant's capacity as an eyewitness rather than in defendant's capacity as a judicial officer); <u>Patterson v. Yeager</u>, No. 12-01964, 2016 WL 589881, at *18 (S.D. Va. Feb. 11, 2016) ("it is not one of the functions of a judge to volunteer information to the police"); <u>Gibson v. Goldston</u>, 85 F.4th 218, 224 (4th Cir. 2023) (judge was not entitled to judicial immunity for her personal action of searching a litigant's home and seizing items).[6]

### B. The HCSO Defendants' Motion to Dismiss

Plaintiff has asserted the following claims against some or all of the HCSO Defendants pursuant to 42 U.S.C. § 1983: (1) First Amendment retaliation; (2) unlawful seizure/false arrest; (3) malicious prosecution; (4) "harassment and intimidation"; (5) abuse of process; (6) violation of liberty interest; and (7) equal protection. Plaintiff also asserts a "conspiracy to interfere with civil rights" claim and state law claims for defamation, invasion of privacy, and intentional infliction of emotional distress.

---

[6] This matter only requires the Court to consider whether the doctrine of judicial immunity bars Plaintiff's civil claims against Magistrate Oates. The undersigned expresses no opinion as to whether Magistrate Oates' alleged destruction of Plaintiff's complaint, if proven and deemed to be improper, could support some type of professional disciplinary action against her.

15

The HCSO Defendants argue that Plaintiff's Complaint should be dismissed because the HCSO is not a suable entity, that certain of Plaintiff's claims fail as a matter of law because there was probable cause for Plaintiff's arrest, that Plaintiff's defamation claim is time-barred, and that Plaintiff's remaining claims are legally deficient.

## 1. Claims Against the HCSO

"[T]here is no statute in North Carolina that authorizes suit against a county's sheriff's department." Das v. Mecklenburg Cnty. Sheriff Off./Dep't, No. 3:22-CV-00561-FDW-DCK, 2023 WL 7116849, at *5 (W.D.N.C. Oct. 27, 2023) (citing Parker v. Bladen Cnty., 583 F. Supp. 2d 736 (E.D.N.C. 2008) ("a county is a legal entity which may be sued," but "there is no corresponding statute authorizing suit against a North Carolina county's sheriff's department"); Landry v. North Carolina, No. 3:10-CV-0585-RJC-DCK, 2011 WL 3683231, at *5 (W.D.N.C. Mar. 11, 2011) recommendation adopted, 2011 WL 3682788 (W.D.N.C. Aug. 23, 2011) (holding that North Carolina sheriff's departments are not legal entities capable of being sued)).

## 2. First Amendment Retaliation Claim

"The First Amendment's Free Speech Clause guarantees both 'the affirmative right to speak' and the concomitant 'right to be free from retaliation by a public official for the exercise of that right.'" Bhattacharya v. Murray, 93 F.4th 675, 687 (4th Cir. 2024) (quoting Constantine v. Rectors & Visitors of

16

George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)). "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006) (quoting Crawford–El v. Britton, 523 U.S. 574, 588 n. 10 & 592 (1998)).

"To state a colorable First Amendment retaliation claim, 'a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant[s] took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant[s'] conduct.'" Shaw v. Foreman, 59 F.4th 121, 130 (4th Cir. 2023) (quoting Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017)).

### a. Element One: Protected Activity

Plaintiff's allegation that she wrote a message critical of law enforcement on the Vehicle satisfies the first element. Nazario v. Gutierrez, 103 F.4th 213, 237 (4th Cir. 2024) ("speaking out about the behavior and misconduct of police officers constitutes protected speech.") (citing City of Hou. v. Hill, 482 U.S. 451, 461 (1987) (ruling that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers")).

### b. Element Two: Adverse Effect

An arrest has been characterized as an "easy to identify" action that adversely affects a plaintiff's First Amendment rights. <u>Hou. Comty. Coll. Sys. v. Wilson</u>, 595 U.S. 468, 477 (2022) (citing <u>Nieves v. Bartlett</u>, 587 U.S. 391, 397–98 (2019)). Therefore, Plaintiff's arrest by Deputy Warren and Deputy Landers, pursuant to the Warrant that was obtained by Deputy Lindsey and Deputy Warren, satisfies the second element.

With respect to Officer Maybin, the HCSO Defendants argue that Plaintiff's First Amendment rights were not adversely affected by Officer Maybin's actions because Plaintiff "bonded out [in] less than three hours." Doc. 40 at 10. The HCSO Defendants, though, provide no persuasive support for the proposition that a person's detention for that period of time does not, as a matter of law, constitute an adverse effect. <u>See</u>, <u>e.g.</u>, <u>Martin v. Duffy</u>, 977 F.3d 294, 305 (4th Cir. 2020) (explaining that a change in the circumstances of detention could have an adverse effect if "motivated by retaliation for the exercise of a constitutionally protected right…even if the act, when taken for a different reason, might have been legitimate") (citing <u>Woods v. Smith</u>, 60 F.3d 1161, 1165 (5th Cir. 1995)).

As for the Citation, the HCSO Defendants assert that it did not have an adverse effect on Plaintiff's rights because Animal Enforcement agreed to "take

away the $550 charge." However, Plaintiff alleges that she was faced with the choice of either paying the Citation or having a "second strike" against her dog.

With respect to the Post, though, the Fourth Circuit has held that "where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 687 (4th Cir. 2000).

### c. Element Three: Causal Relationship

The Amended Complaint alleges a clear causal relationship between Plaintiff's act of writing "12 SUX" on the Vehicle and the subsequent issuance and execution of the Warrant.

Similarly, Plaintiff alleges a causal relationship between her act of writing on the Vehicle and Officer Maybin's conduct; she states that while she was being held at the Henderson County Detention Facility, she witnessed Officer Maybin "intentionally persuade several bond companies to deny [her] release…." "as a direct result of her taking offense to Plaintiff's '12 Sux' signage." Id. Doc. 37 at 14, 24.

The HCSO Defendants argue that Plaintiff has failed to allege a causal relationship between the Citation and her speech. They are correct that Plaintiff has not made a specific allegation that the Citation was issued

19

because of what Plaintiff wrote on the Vehicle. However, Plaintiff has alleged a close temporal proximity between the two events; Plaintiff wrote on the Vehicle and was arrested on October 1, 2021 and Officer Reece came to Plaintiff's home and issued the Citation the next morning. Shaw v. Foreman, 59 F.4th 121, 130 (4th Cir. 2023) (to show causation, plaintiff must show defendant was aware of plaintiff's protected activity and that there was "some degree of temporal proximity to suggest a causal connection"). Given the response of the HCSO on October 1, 2021, including the creation of the Post, it is reasonable to infer that Officer Reece knew of Plaintiff's conduct and subsequent arrest when he conducted the animal control inspection. See Shaw, 59 F.4th at 131 ("with respect to knowledge, Shaw's evidence is concededly convoluted and slightly tenuous. Nevertheless, when drawing all reasonable inferences in his favor, the record suggests that the Prison Officials knew of his protected activity").

The undersigned is therefore persuaded that Plaintiff has plausibly alleged a First Amendment retaliation claim based on her arrest, Officer Maybin's actions related to Plaintiff's detention, and the Citation.

### d. Probable Cause

The HCSO Defendants argue, though, that Plaintiff's First Amendment retaliation claim is barred because there was probable cause for Plaintiff's arrest, as conclusively established by Plaintiff's conviction. See Doc. 40-5; Mosk

20

v. Gaston Cnty., 3:17-cv-00177-RJC-DSC, 2018 WL 1566339, at *5 (W.D.N.C. Mar. 30, 2018) ("Plaintiff was convicted in state district court of the crimes for which he was arrested, which establishes the existence of probable cause for his arrest.").

The United States Supreme Court has held that "as a general rule, a plaintiff bringing a retaliatory-arrest claim 'must plead and prove the absence of probable cause for the arrest.'" Gonzalez v. Trevino, 602 U.S. 653, 655 (2024) (quoting Nieves v. Bartlett, 587 U.S. 391, 407 (2019)).

The Court, however, has also recognized a "narrow exception to that rule": "The existence of probable cause does not defeat a plaintiff's claim if he produces 'objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" Id. See also Nieves, 587 U.S. at 407 (describing hypothetical where an individual who was complaining about police conduct was arrested for jaywalking when other individuals (who were not complaining about the police) were not arrested for jaywalking).

In this case, Plaintiff has alleged that she observed "several indications of signage already made with the Sharpie markers" on her way into the Magistrate's Office on October 1, 2021, that one of her acquaintances was "doodling" on the Vehicle when Plaintiff left the Magistrate's Office, and that

21

"[e]very other person…to participate in HCSO's event by adding signage to the vehicle was not arrested." Doc. 37 at 8-9, 25.

Read in the light most favorable to Plaintiff, these allegations are sufficient, at this stage of the case, to indicate that Plaintiff's First Amendment retaliation claim falls within the <u>Nieves</u> exception. <u>See</u> <u>e.g.,</u> <u>Green v. Johnson</u>, No. 1:23-CV-969, 2024 WL 4751399 at *3 (M.D.N.C. Nov. 12, 2024) ("Even as a retaliatory arrest claim, [plaintiff's claim] survives to the extent it is based on allegations that [plaintiff] was treated differently from other similarly situated persons who did not engage in the kinds of protected speech [defendant] allegedly did not like and who were not arrested; these allegations potentially bring this claim within an exception to the usual rule that probable cause to arrest defeats a § 1983 First Amendment retaliatory arrest claim.").

### 3. Fourth Amendment Claims

#### a. False Arrest and Malicious Prosecution

"A claim for false arrest alleges that a warrantless arrest lacked probable cause; a claim for malicious prosecution alleges that an arrest made pursuant to a warrant lacked probable cause." <u>Smith v. Munday</u>, 848 F.3d 248, 257 (4th Cir. 2017) (citing <u>Brooks v. City of Winston–Salem</u>, 85 F.3d 178, 181–82 (4th Cir. 1996); <u>see also</u> <u>Mosk v. Gaston Cnty.</u>, 3:17-cv-00177-RJC-DSC, 2018 WL 1566339, at *4 (W.D.N.C. Mar. 30, 2018) (citing <u>Miller v. Prince George's Cnty.</u>, 475 F.3d 621 (4th Cir. 2007)); <u>Hupp v. Cook</u>, 931 F.3d 307, 324 (4th Cir. 2019).

22

"As a general rule, 'absent a showing that the conviction in District Court was procured by fraud or other unfair means, the conviction conclusively establishes the existence of probable cause, even though plaintiff was acquitted in Superior Court." Cloaninger v. McDevitt, No. 1:06cv135, 2007 WL 9734110, at *11–12 (W.D.N.C. Sept. 26, 2007) (quoting Myrick v. Cooley, 91 N.C. 209, 213 (1988) (malicious prosecution claim)), aff'd 555 F.3d 324 (4th Cir. 2009); Mosk, 2018 WL 1566339, at *5.

Here, Plaintiff was convicted in state court of "Injury to Personal Property." Doc. 40-5. Although Plaintiff alleges that her arrest and the institution of criminal proceedings against her were premised on "false information" and "material omissions" by Deputy Warren, Deputy Lindsay, and Magistrate Oates, see Doc. 37 at 28, Plaintiff does not allege that her conviction itself was procured through fraud or other unfair means. Id. at 17.[7]

---

[7] The parties have not addressed whether the Nieves exception for a First Amendment retaliation claim may also apply to Fourth Amendment claims for false arrest or malicious prosecution. See e.g., Nieves, 587 U.S. at 414 (Gorsuch, J., concurring in part and dissenting in part) ("So maybe probable cause should be enough today to defeat claims for false arrest or false imprisonment, given that arrests today are usually legally authorized if supported by probable cause. But that doesn't mean probable cause is also enough to defeat a First Amendment retaliatory arrest claim."); Nigro v. City of New York, No. 19-CV-2369 (JMF), 2020 WL 5503539, at *3-4 (S.D.N.Y. Sept. 11, 2020) (granting a motion to dismiss a false arrest claim on the grounds that probable cause to arrest the plaintiff existed but also noting that the plaintiff's "retaliatory arrest claim would seem to fall squarely within the Nieves exception"); Patton v. Ind. Univ. Bd. of Trustees, No. 1:20-cv-00699-TWP-MJD, 2023 WL 1798735, at *9 (S.D. Ind. Feb. 7, 2023) ("Probable cause generally bars claims for First Amendment retaliatory arrest and prosecution, and absolutely bars claims of Fourth Amendment false arrest").

### b. Harassment

"[T]here is no independent cause of action for police harassment under 42 U.S.C. § 1983." Andrews v. Unknown, No. 7:22-cv-00536, 2024 WL 3493295, at *2 (W.D. Va. July 19, 2024) (citing Walker v. Johnson, 446 F. Supp. 3d 88, 102 (W.D. Va. 2020) ("[Plaintiff] does not cite, and the court is unable to find, any published decisions from the Fourth Circuit recognizing an independent claim for police harassment") (citing Arnold v. Truemper, 833 F. Supp. 678, 682 (N.D. Ill. 1993) ("[P]olice harassment, without more, cannot form a basis for a § 1983 cause of action."))).

### 4. Fourteenth Amendment Claims

### a. Procedural Due Process[8]

"To establish that a government actor violated [the Fourteenth Amendment's due process protection], 'a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest

---

[8] Plaintiff has attempted to divide her procedural due process claim into two parts, an "abuse of process" claim and a "liberty interest" claim. However, the undersigned has considered Plaintiff's claim as being a single claim for violation of her procedural due process rights as ensured by the Fourteenth Amendment. See e.g., Land v. Barlow, No. 2:21-cv-01883-RMG-MHC, 2021 WL 6495298, at *14 n.2 (D.S.C. Nov. 17, 2021) recommendation adopted 2021 WL 5997984 (D.S.C. Dec. 20, 2021) (citations omitted) ("Although the Fourth Circuit has not explicitly analyzed the nature of an abuse of process claim under § 1983, district courts in the circuit, citing cases from other circuits, have held that abuse of process is, in effect, a denial of procedural due process.").

24

without due process of law.'" <u>Cartagena v. Lovell</u>, 103 F.4th 171, 182 (4th Cir. 2024) (quoting <u>Prieto v. Clarke</u>, 780 F.3d 245, 248 (4th Cir. 2015)).

Plaintiff's arrest was a deprivation of her liberty. <u>See</u> <u>Jordan by Jordan v. Jackson</u>, 15 F.3d 333, 350 (4th Cir. 1994) ("An arrest is virtually a complete deprivation of a person's liberty").

However, Plaintiff has not alleged sufficiently that such deprivation occurred without due process of law. Plaintiff's allegations indicate that a Warrant was issued, that she was arrested, that she was provided with counsel during proceedings before the state court, and that she appealed her conviction, ultimately leading to a dismissal of the charge against her. Plaintiff has not identified any additional process to which she was entitled under the Fourteenth Amendment. <u>See</u> <u>e.g.</u>, <u>Cramer v. Crutchfield</u>, 496 F. Supp. 949, 952 (E.D. Va. 1980), <u>aff'd</u>, 648 F.2d 943 (4th Cir. 1981) (finding that the plaintiff's abuse of process claim failed because "he was accorded the full measure of the due process of law to which he was entitled under the Fourteenth Amendment").

### b. Equal Protection

Plaintiff alleges that she was subjected to "unequal application of the law" when she was arrested and punished "in retaliation for her protected speech." Doc. 37 at 33. The HSCO Defendants contend that Plaintiff's equal

protection claim should be dismissed because there was a rational basis for her arrest – specifically, that she was observed committing a crime.

The parties have not briefed sufficiently the issues of whether Plaintiff's equal protection claim should be construed as a selective enforcement claim, see e.g., Ussery v. Freeman, No. 5:23-CV-219-BO-RJ, 2024 WL 3073299, at *13 (E.D.N.C. June 20, 2024) (appeal pending); Flowers v. Fiore, 359 F.3d 24, 34 (1st Cir. 2004); Frederick Douglass Found., Inc. v. District of Columbia, 82 F.4th 1122, 1147 (D.D.C. 2023) ("In the context of an equal protection selective enforcement claim, a plaintiff must show that others similarly situated were not prosecuted and that the prosecution was motivated by invidious discrimination….In other words, for its equal protection claim, the Foundation must plausibly plead the District's enforcement decisions were rooted in "animus" against the Foundation's viewpoint"), and/or whether this claim is viable notwithstanding Plaintiff's assertion of a First Amendment retaliation claim, see e.g., Wilcox v. Lyons, 970 F.3d 452, 458 (4th Cir. Aug. 11, 2020) (stating, in an employment case, that "[n]either [the Fourth Circuit] nor the Supreme Court has recognized an equal protection right to be free from retaliation" and that the Fourth Circuit "ha[s] previously held that '[a] pure or generic retaliation claim ... simply does not implicate the Equal Protection Clause.'"), cert denied 141 S.Ct. 2754 (Mem) (2021) (citation omitted); Martin v. Duffy, 858 F.3d 239, 252 (4th Cir. 2017) (affirming dismissal of plaintiff's

equal protection claim based on alleged retaliation following plaintiff's filing of a grievance against a prison sergeant where claim was "at its core, a First Amendment retaliation claim") (citations omitted).

Consequently, and further given the lenient pleading standards applicable to *pro se* litigants, the undersigned will recommend that this claim be allowed to proceed at this time, to be addressed further at a later stage, if necessary.

### 5. Conspiracy

To state a claim under 42 U.S.C. § 1985, a party must allege "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995).

In contrast, "[t]o state a claim for conspiracy to deprive an individual of a constitutional right in violation of § 1983, Plaintiff must allege that defendants (1) 'acted jointly in concert' and (2) performed an overt act (3) 'in furtherance of the conspiracy' that (4) resulted in the deprivation of a constitutional right." Harrison v. Prince William Cnty. Police Dept., 640 F.

Supp. 2d 688, 706–07 (E.D. Va. 2009) (quoting Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)).

Here, despite Plaintiff's reference to 42 U.S.C. § 1985, the Amended Complaint appears to assert a claim of conspiracy pursuant to 42 U.S.C. § 1983.

The HCSO Defendants argue that this conspiracy claim fails because there was probable cause for Plaintiff's arrest.

However, as discussed above, Plaintiff has alleged adequately a claim for retaliation in violation of her First Amendment rights.

Accordingly, the undersigned will recommend that Plaintiff's conspiracy claim likewise be allowed to proceed. See Waddle v. Claughton, No. 4:18-cv-00010, 2018 WL 3130444, at *6 (W.D. Va. June 26, 2018).

### 6. State Law Claims

#### a. Defamation

In North Carolina, a claim for defamation is subject to a one-year statute of limitations, which begins to run "at the date of the publication of the defamatory words...." Bilbro v. ECU Health, 904 S.E.2d 180, 2024 WL 3665727, at *2 (unpubl. table decision) (N.C.App. Aug. 6, 2024) (citing N.C.G.S. § 1-54(3) (2023), Gibson v. Mutual Life Ins. Co. of N.Y., 121 N.C.App. 284, 287 (1996)).

28

Here, Plaintiff alleges that Officer Duncan generated the Post on October 1, 2021. Doc. 37 at 38. However, Plaintiff did not file her original complaint until September 14, 2023. Doc. 1.

### b. Invasion of Privacy

"It is undisputed that North Carolina does not 'recognize a cause of action for false light in the public eye invasion of privacy.'" Ouazzani-Chadi v. Greensboro News & Rec., No. 1:06CV00848, 2007 WL 1362389, at *2 (M.D.N.C. May 8, 2007) (quoting Renwick v. News & Observer Pub. Co., 310 N.C. 312, 322 (1984)); see also Wright v. eClerx, LLC, No. 5:20-CV-587-BO, 2023 WL 3292877, at *3 (E.D.N.C. May 5, 2023) (noting that "North Carolina does not recognize a cause of action for the invasion of privacy by disclosure of private facts or invasion of privacy by placing a plaintiff in a false light before the public").

### c. Intentional Infliction of Emotional Distress

Under North Carolina law, "[t]he elements of intentional infliction of emotional distress are: '(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress.'" Cherry v. United Parcel Serv., Inc., No. 5:07–CV–403–D, 2009 WL 8641019, at *13 (E.D.N.C. Sept. 28, 2009) (quoting Hogan v. Forsyth Country Club Co., 79 N.C.App. 483, 487–88 (1986)).

Here, Plaintiff alleges that Defendants' acts "consist of extreme, outrageous and bullying conduct … and did in fact cause, severe emotional distress and mental anguish." Doc. 37 at 40.

However, Plaintiff has not alleged extreme and outrageous conduct sufficient to state an intentional infliction of emotional distress claim. See Chidnese v. Chidnese, 210 N.C.App. 299, 317–18 (2011) (prosecuting a criminal proceeding against a plaintiff with malice and without probable cause, even if that proceeding terminated in the plaintiff's favor, does not constitute extreme and outrageous conduct) (collecting cases); Franklin v. Yancey Cnty., No. 1:09cv199, 2010 WL 317804, at *7 (W.D.N.C. Jan. 19, 2010) ("mere insults, indignities, and threats" do not constitute extreme and outrageous conduct) (quoting Guthrie v. Conroy, 152 N.C.App. 15, 22 (2002)).

Further, even if the alleged conduct could be considered extreme and outrageous, Plaintiff has not alleged severe emotional distress adequately. See Riddle v. Buncombe Cnty. Bd. of Educ., 256 N.C.App. 72, 74–75 (2017); Holleman v. Aiken, 193 N.C.App. 484, 501 (2008) (affirming dismissal of intentional infliction of emotional distress claim where "plaintiff has failed to make any specific allegations as [to] the nature of her severe emotional distress"); Franklin v. Yancey Cnty., No. No. 1:09cv199, 2010 WL 317804, at *7 (W.D.N.C. Jan. 19, 2010) ("Plaintiff does not make any specific factual allegations as to his 'severe emotional distress' and relies entirely on

30

conclusory statements. Plaintiff merely alleges in general fashion that he suffered humiliation and that his reputation is 'important' to him.").

## IV.  RECOMMENDATION

The undersigned **RESPECTFULLY RECOMMENDS** that:

1. The Judicial Defendants' Motion to Dismiss be (Doc. 41) be **GRANTED** as follows:

   a. That the claims against the Judicial Defendants in their official capacities be **DISMISSED WITHOUT PREJUDICE**.

   b. That the claims against the Judicial Defendants in their individual capacities be **DISMISSED**.

2. The HCSO Defendants' Motion to Dismiss (Doc. 39) be **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. That the following claims be **DISMISSED**:

      i. All claims against the HCSO.

      ii. All official capacity claims against the individual HCSO Defendants.

      iii. The following individual capacity claims:

         1. Plaintiff's First Amendment retaliation claim against Officer Duncan.

         2. Plaintiff's Fourth Amendment claims of false arrest, malicious prosecution, and harassment against the individual HCSO Defendants.

         3. Plaintiff's Fourteenth Amendment claims based on procedural due process against the individual HCSO Defendants.

         4. Plaintiff's state law claims of defamation, invasion of privacy, and intentional infliction of

31

emotional distress against the individual HCSO
Defendants.

b. That the following individual capacity claims be allowed to
**PROCEED**:

    i. Plaintiff's First Amendment retaliation claim against
Deputy Warren, Deputy Lindsay, Deputy Landers,
Officer Maybin, and Officer Reece.

    ii. Plaintiff's Equal Protection claim against the
individual HCSO Defendants.

    iii. Plaintiff's conspiracy claim against the individual
HCSO Defendants.

Signed: February 21, 2025

W. Carleton Metcalf
United States Magistrate Judge

32

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).