UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NUMBER 1:23-CV-270

FILED
ASHEVILLE, NC

MAR 10 2025

U.S. DISTRICT COURT
W. DISTRICT OF N.C.

Hand-Delivered

MACKENZIE ELAINE BROWN

    Plaintiff

v.

HENDERSON COUNTY SHERIFF'S OFFICE, et al.

    Defendants

**PLAINTIFF'S OBJECTIONS TO MEMORANDUM AND RECOMMENDATION [DOC. 53]**

NOW COMES Plaintiff Mackenzie Elaine Brown, appearing pro se on this day of March 5, 2025, and hereby submits this Objection to specific portions of the Memorandum and Recommendation filed by the Magistrate Judge [Document 53] and respectfully requests that this Court conduct a de novo review of those portions. Plaintiff submits this Objection pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).

## I. INTRODUCTION

In summary, the Memorandum and Recommendation ("M&R") recommends that three claims proceed, all in the individual capacity context and only involving the six individual HCSO defendants: First, the First Amendment Retaliation claim against the HCSO defendants (except Officer Duncan); Second, the Equal Protection claim against the six HCSO defendants; Third, the Section 1985 Conspiracy claim.

However, the M&R incorrectly recommends dismissal of the following viable claims against the HCSO defendants: (1) the First Amendment retaliation claim against Officer Duncan; (2) the False Arrest claim; (3) the Malicious Prosecution claim; (4) the Abuse of Process claim; (5) the Violation of Liberty Interest claim; and (6) the Intentional infliction of emotional distress claim.

Furthermore, Plaintiff objects to the M&R's recommendation to dismiss the following claims against Magistrate Oates (at least to the extent that her individual capacity goes): (1) First Amendment retaliation; (2) False Arrest; (3) Malicious Prosecution; (4) Abuse of Process; (5) Violation of Liberty Interest; (6) Equal Protection; (7) Conspiracy; (8) Obstruction of justice; (9) Spoliation of Evidence; (10) Violation of Victims' Rights under the NC Constitution; and (11) Intentional infliction of emotional distress.

## II. OBJECTION TO DISMISSAL OF INDIVIDUAL CAPACITY CLAIMS AGAINST MAGISTRATE OATES

The M&R recommends dismissal of all claims against Magistrate Oates and notes it "expresses no opinion as to whether Magistrate Oates' alleged destruction of Plaintiff's complaint, if proven and deemed to be improper, could support some type of professional disciplinary action against her." [Doc. 53 at 15]. This leaves it up in the air for the final

determination to be made by the Judge who reviews the M&R. Plaintiff asks the Court to give proper consideration to her objections against the dismissal of her individual-capacity claims against Magistrate Oates, allowing her the chance to prove that the destruction of Plaintiff's criminal complaint form was not a judicial act protected by absolute judicial immunity.

### A. Administrative Rather Than Judicial Function

Document management and preservation constitute administrative functions rather than judicial ones. The destruction of a domestic violence complaint is not a function normally performed by a judge—it is the antithesis of judicial function, which is to process and adjudicate such complaints. [Exhibit 1].

### B. Retaliatory Motive Towards Plaintiff

As a direct result of Magistrate Oates taking offense to Plaintiff's "12 SUX" signage, she destroyed the criminal complaint form that Plaintiff had submitted to her as the victim of a domestic violence assault incident, and she was involved in the initiation of false criminal charges against Plaintiff for Injury to Personal Property.

As stated in the Amended Complaint, Magistrate Jernigan informed Plaintiff that the criminal complaint form she had submitted to Magistrate Oates "had not been filed and that she was unable to locate any records related to it whatsoever." [Doc. 37 at 19]. The timing is crucially indicative of retaliation because of the temporal proximity between Plaintiff's "12 SUX" signage and the destroyance of the form.

### C. Procedural Due Process Violations

Magistrate Oates' actions violated Plaintiff's procedural due process rights, because she intentionally failed to use the criminal court process according to procedure. [Exhibit 2]. In failing to follow her procedural duties, Magistrate Oates had ulterior motives to punish Plaintiff

by annihilating her right to seek out support and remedy as a victim. Due to the unnecessary delay caused by the document destruction, Plaintiff never got the justice she sought, deserved, and needed for the violent incident, because Branch passed away before the assault matter could ever be resolved in court. [Exhibit 3].

Factors supporting the conclusion that Magistrate Oates had no right to destroy Plaintiff's criminal complaint form: First, the fact that Branch was the father of Plaintiff's unborn child establishes a personal relationship under North Carolina law; Second, the 911 call documentation strengthened the credibility of the complaint by establishing the timeline and immediate reporting of the incident; and Third, the deputy that the 911 operator transferred her to recommended that Plaintiff file charges against Branch at the Magistrate's Office in her spare time. [Doc 37 at 7].

Potential criminal charges that would have been brought against Branch, had Magistrate Oates followed her procedural duties properly:

1. Assault on a Female (NCGS § 14-33(c)(2)). This charge applies when a male 18 years or older assaults a female. Given that Branch was physically strangling Plaintiff and squeezing her pregnant torso during the incident, this charge is clearly applicable. The established personal relationship makes this a mandatory charge in domestic violence situations in North Carolina.

2. Battery of an Unborn Child (NCGS § 14-23.6). This charge applies when someone commits battery against a woman, knowing she is pregnant, which threatens the life of the unborn child. Considering that Branch took physical actions that could harm a fetus (torso compression and strangulation of Plaintiff),

he had knowledge of her pregnancy, and he made explicit threats to kill Plaintiff and her baby, this charge is clearly appropriate.

3. Communicating Threats (NCGS § 14-277.1). Considering that Branch threatened to kill Plaintiff and her baby, threatened to burn down a home with Plaintiff inside, the threats were made in a manner that would cause a reasonable person to fear and believe the threats would be carried out, and that physical assault accompanyed the threats, this charge is clearly appropriate.

4. Misdemeanor Larceny (NCGS § 14-72(a)). The fact that the complaint clearly states "He stole the axe" establishes this charge beyond question, Plaintiff's axe was valued at $80, and Branch's intent was to permanently deprive Plaintiff of the axe.

5. False Imprisonment (NCGS § 14-43.3). This charge is particularly applicable in domestic violence situations where one partner attempts to prevent the other from leaving during an altercation. The complaint states Branch was "squeezing my torso to keep me restrained," which establishes: Physical restraint against Plaintiff's will, prevention of her freedom of movement, and the use of physical force to accomplish the restraint.

6. Domestic Violence charges (NCGS § 50B). Given the personal relationship as the father of Plaintiff's unborn child, North Carolina's domestic violence provisions would apply to the case. Mandatory arrest provisions would have applied, such as a 48-hour hold.

The overall actions of Magistrate Oates demonstrate disturbing violations of Plaintiff's clearly established constitutional, statutory, and victim's rights, making dismissal of the individual capacity claims against Magistrate Oates inappropriate at this stage.

## III. OBJECTION TO DISMISSAL OF FIRST AMENDMENT RETALIATION CLAIM AGAINST OFFICER DUNCAN

The M&R incorrectly recommends dismissal of Plaintiff's First Amendment retaliation claim against Officer Duncan. He should not be excluded from the rest of the HCSO defendants when addressing the retaliation towards Plaintiff.

A. Plaintiff Engaged in a Protected Activity

The M&R acknowledges that Plaintiff's allegation that she wrote a message critical of law enforcement on the pink vehicle satisfies the first element of the retaliation claim against the other HCSO defendants. [Doc. 53 at 16-17]. Therefore, it should suffice for the claim against Officer Duncan as well.

B. Adverse Action was Taken Against Plaintiff for her Protected Activity

The Supreme Court's decision in Houston Community College System v. Wilson, 595 U.S. 468, 477 (2022) recognized that First Amendment retaliation can take various forms beyond arrest, including "a wide array of retaliatory actions" that would chill protected speech. Officer Duncan's post falls within this broader understanding of retaliatory action.

The use of hashtags and mocking language that Officer Duncan used in the Facebook post, such as "#PlayStupidGamesWinStupidPrizes" and "#OurSheriffDoesntPlay" indicates personal animus far beyond professional law enforcement conduct. [Doc. 37 at 15]. The collaboration between Deputy Warren and Officer Duncan contributes to that pattern of retaliation, demonstrated by Deputy Warren taking the photos of Plaintiff being arrested

specifically for public dissemination, and Officer Duncan using those photos to publicly humiliate Plaintiff through the HCSO social media page. [Doc. 37 at 10-11, 14-15].

C. Causal Relationship is Clearly Established

Officer Duncan's post explicitly references Plaintiff's protected speech, stating that Plaintiff "decided it would be a good idea to show her respect by coming to the Sheriff's Office and vandalizing this tribute car." His post stated, "Seeing how Mackenzie is such a supporter of our pink patrol car we decided to allow her to be the first person to ride in the back seat of it," clearly connecting her speech to HCSO's retaliatory response. [Doc. 37 at 14-15].

Plaintiff was inside the Magistrate's Office at 12:39 p.m., proven by the file information of the picture she took of the criminal complaint form right before submitting it to Magistrate Oates. [Exhibit 4]. Plaintiff was arrested at 4:23 p.m. and she bonded out of jail several hours later at 8:20 p.m. In the meantime, Officer Duncan had created and published the false portrayal of Plaintiff's arrest in a post on the HCSO Facebook page at 5:40 p.m., and he also posted the same on the HCSO mobile app at 5:52 p.m. [Exhibit 5]. The timing of the Facebook post and the post's direct reference to Plaintiff's speech establishes a clear causal relationship between her protected speech and Officer Duncan's retaliatory actions.

## IV. OBJECTION TO DISMISSAL OF FALSE ARREST AND MALICIOUS PROSECUTION CLAIMS

The M&R incorrectly recommends dismissal of Plaintiff's Fourth Amendment false arrest and malicious prosecution claims based on the conclusion that Plaintiff's District Court conviction conclusively established probable cause. "An arrest made in violation of the Fourth Amendment protection against unreasonable seizures of the person will give rise to a cause of

action under Section 1983." Myrick v. Cooley, 91 N.C.App. 209, 211, 371 S.E.2d 492, 494 (1988).

A. The Nieves Exception Should Apply

The M&R correctly applies the Nieves exception to allow Plaintiff's First Amendment retaliation claim to proceed, recognizing that where a plaintiff produces "objective evidence that [they were] arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," the existence of probable cause does not defeat the claim. This same logic should apply to Plaintiff's Fourth Amendment claims, especially because there was no existence of probable cause here.

B. Lack of Probable Cause

Plaintiff was unlawfully arrested pursuant to a warrant for Injury to Personal Property, which was based upon false information and unsupported by probable cause. [Doc. 37 at 28]. If the particular conduct of Plaintiff was erroneously believed to be criminal when in fact it was not, the presence of probable cause to believe Plaintiff had committed that conduct would not provide probable cause to arrest. [Doc. 37 at 25].

As alleged in the Amended Complaint, Deputies Warren and Lindsay obtained the warrant by providing misleading information and omitting critical facts. The omissions were material to the probable cause determination. [Doc 37 at 28]. The Court in Hupp v. Cook (931 F.3d 307, 4th Cir. 2019) held that "where officers have intentionally or recklessly made material misrepresentations or omissions to a magistrate judge, the warrant may be invalidated under the Fourth Amendment."

In evaluating the statements made within the Warrant for Arrest, the degree of damage to the property could be measured by the cost of repair or replacement of the "damaged property."

The order for arrest alleges that Plaintiff's damage to the car exceeded $200. This statement alone proves the lack of probable cause, because the car part was never repaired or replaced in the spot that Plaintiff added her "12 Sux" signage, but rather it was merely covered with vinyl screening instead. In addition, the sheriff's cruiser was wrapped in pink film that peels right off, plus Advent Health is who funded the event in the first place–not HCSO. [Doc 37 at 17-18].

C. Malice Towards Plaintiff

The defendants instituted the proceeding against Plaintiff with malice because they committed the wrongful acts against Plaintiff intentionally, unreasonably, with no justification, and without probable cause.

D. Conviction was Overturned on Appeal

Despite the M&R citing the general rule that "absent a showing that the conviction in District Court was procured by fraud or other unfair means, the conviction conclusively establishes the existence of probable cause," there has been an error in review, because Plaintiff did indeed allege that Judge Cowan "ignored facts that made it obvious Plaintiff was innocent of the alleged crime and convicted her anyway" and "conducted [the trial] with personal malice, partiality, and haste." [Doc. 37 at 18].

Regardless, to succeed on a Malicious Prosecution claim, Plaintiff must only show that the proceeding resulted in her favor, which it did. The Injury to Personal Property conviction was overturned when the state dismissed the charge on appeal for the reason "Not In The State's Interest To Prosecute," suggesting a recognition that the case against Plaintiff lacked merit. [Doc. 37 at 23]. [Exhibit 6].

## V. OBJECTION TO DISMISSAL OF PROCEDURAL DUE PROCESS CLAIMS

The M&R improperly recommended dismissal of Plaintiff's "abuse of process" and "liberty interest" claims and concluded that Plaintiff failed to allege sufficiently that deprivation of liberty occurred without due process of law. [Doc. 53 at 24-25].

A. Failure to Follow Procedure in Warrant Process

The Supreme Court has held that the Due Process Clause is implicated when government officials knowingly use false testimony to obtain a warrant or conviction. See Napue v. Illinois, 360 U.S. 264, 269 (1959). The defendants were each well aware of the scope of the inaccuracies and omissions in the warrant for Plaintiff's arrest–specifically, the omission that the HCSO had invited the public to write on the Vehicle. [Doc 37 at 17-18]. This constitutes a procedural due process violation.

The Defendants deliberately used the criminal court process with improper motives. That process was invoked against Plaintiff by the defendants seeking a criminal process in the form of a Warrant for Arrest, alleging Injury to Personal Property. The defendants had an ulterior purpose in using the process to restrain Plaintiff of her liberty rights. After the Warrant for Plaintiff's arrest was issued, the defendants used it to intentionally harass and punish her by arresting her for a crime they each knew she was innocent of.

B. Deprivation of Liberty

A person is detained against her will if she is deprived of her liberty; that is, compelled to remain where she does not wish to remain, or compelled to go where she does not wish to go. The procedures used by the Defendants were not constitutionally adequate and Plaintiff has suffered consequently from the deprivation of her due process right to liberty.

**VI. OBJECTION TO DISMISSAL OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM**

The M&R incorrectly states that Plaintiff has not alleged extreme and outrageous conduct or severe emotional distress. [Doc. 53 at 30]. However, this recommendation fails to recognize the cumulative nature of the defendants' conduct and the specific allegations of severe emotional distress.

A. Extreme and Outrageous Conduct

The abuse of authority by government officials in positions of trust constitutes conduct that exceeds ordinary police tactics - behavior so extreme it goes "beyond all possible bounds of decency" in a civilized society. These specific actions include: (1) Deputies Warren and Landers "aggressively yanked" Plaintiff into her driveway and handcuffed her despite her immediate disclosure of her pregnancy, called her "a piece of sh\*\*," accused her of resisting arrest despite her compliance, took embarrassing photos of her in handcuffs in front of the pink vehicle without her permission, and transported her to jail in the same vehicle she allegedly "vandalized" as a form of public mockery and punishment; (2) Deputy Lindsay participated in obtaining an arrest warrant despite knowing the public was invited to write on the vehicle as part of HCSO's event; (3) Officer Duncan published a derogatory portrayal of Plaintiff's arrest on the HCSO Facebook page with false statements and mocking hashtags, in a context to degrade and belittle her; (4) Officer Reece conducted an "extremely random and unexpected dangerous dog inspection" the very next morning after Plaintiff's arrest and presented her with the impossible choice of either paying a $550 fine or Animal Enforcement's threat at having Plaintiff's dog euthanized; (5) Officer Maybin intentionally interfered with Plaintiff's ability to secure bond by telling Plaintiff "we told them what you wrote and they respect us so they don't want to come get you now," personally answering calls to dissuade bail agencies from assisting Plaintiff; and (6) Magistrate Oates deliberately failed to process Plaintiff's domestic violence complaint and destroyed

evidence of the submitted form, impeding Plaintiff's right to seek legal protection. [Doc. 37 at 10-21].

### B. Intentional Harm Towards Plaintiff

A person acts intentionally if he desires to cause the consequences of his act or believes that the consequences are substantially certain to occur. The culmination of these actions go far beyond "mere insults, indignities, and threats" as characterized by the M&R. Rather, they represent a coordinated campaign of harassment by multiple government officials across different agencies (Sheriff's Office, Magistrate's Office, Detention Facility, Animal Enforcement) targeted at Plaintiff specifically for expressing protected speech. The Defendants' acts consist of extreme, outrageous, and bullying conduct, or involved a reckless or callous disregard for Plaintiff's rights, and they each intended to cause her severe emotional distress.

### C. Severe Emotional Distress

The complaint sufficiently alleges that the actions taken by the defendants to hurt, degrade, and punish Plaintiff has been detrimental to her well-being. This was not just some temporary emotional discomfort that would eventually fade away. The extent of the emotional distress caused by the defendants has been severe and long-lasting. To this day Plaintiff experiences nightmares about being locked in jail as an innocent person. In her most recent nightmare, the memory starts out inside the HCSO building with a bunch of deputies wearing black rubber gloves standing shoulder-to-shoulder in a full circle around her, blocking any way out, threatening to beat her if she tried.

### D. Reputational Harm

The public shaming on social media with Plaintiff's name and image caused reputational damage in the community, greatly impacting her personal relationships because of the false

portrayal of the incident. Right after the incident, one of Plaintiff's family members nearly disowned her because they didn't want to be attached to someone that appeared to have vandalized a breast cancer support car. The true story did not matter to them, it was how the story appeared online that mattered to them. [Exhibit 7]

E. Heightened Vulnerability as a Pregnant Woman

Courts have recognized that taking advantage of a known vulnerability of the plaintiff may contribute to a finding of extreme and outrageous conduct. See Restatement (Second) of Torts § 46 cmt. f (1965). The defendants' actions toward a pregnant domestic violence victim seeking help demonstrated a callous indifference to her vulnerable state.

Plaintiff was 16 weeks pregnant at the time of the violent incident with Branch and 17 weeks pregnant when she went to the Magistrate's Office on October 1, 2021. Plaintiff's son was born on February 19, 2022, one month early from his due date. Plaintiff went to the Magistrate's Office on October 1, 2021, in search of justice, which she needed, expected, and deserved, and to this day, she still feels like she needs it and deserves it. She thought she could trust law enforcement enough to go to them to address a violent incident in which the father of her baby strangled her and held her down while squeezing her pregnant stomach. She thought she was going to die in the incident. It's by the Grace of God that she was able to flee the scene of her home. Plaintiff wholeheartedly believes that if not for the actions of Magistrate Oates destroying the original criminal complaint form, she would have received that justice sometime in 2022 or 2023 at the absolute latest.

## VII. CONCLUSION

Plaintiff asks the Court to take judicial notice of any facts she presented that were not previously included in any of her filings.

The recommended dismissal of several viable claims would have significant negative implications for the public interest: It would suggest that no remedy exists for citizens who are subjected to a campaign of harassment and intimidation by government officials acting in concert. Allowing these claims to proceed would serve the public interest by ensuring that government officials are held accountable for constitutional violations and abuse of power, particularly when those violations are motivated by retaliation for protected speech.

For the foregoing reasons, Plaintiff respectfully requests that this Court reject the portions of the Memorandum and Recommendation that recommend dismissal of: (1) the individual capacity claims against Magistrate Oates; (2) the First Amendment retaliation claim against Officer Duncan; (3) the Fourth Amendment false arrest and malicious prosecution claims; (5) the Fourteenth Amendment procedural due process claims; and (6) the intentional infliction of emotional distress claim.

# **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing to the U.S. Clerk of Courts Office, and mailed a copy to the following attorney's of the Defendants:


Sean F. Perrin
Womble Bond Dickinson (US) LLP
301 S. College Street, Ste. 3500, Charlotte, NC 28202
Telephone: 704-331-4992
Facsimile: 704-338-7814
sean.perrin@wbd-us.com
Counsel for Defendants Henderson County Sheriff's Office, Robert Jordan Warren, Michael Scott Lindsay, Crystal Landers, Johnny Duncan, Bradley Reece, and Brittany Maybin.

and

Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629, Raleigh, NC 27602
Telephone: (919) 716-6800
Fax: (919) 716-6755
eobrien@ncdoj.gov
State Bar No. 28885
Counsel for Defendants Susan Oates & Emily Cowan.

Dated: March 7, 2025

*Mackenzie Elaine Brown*
Mackenzie Elaine Brown,
Plaintiff & Pro Se Litigant
158 Haven Rd, East Flat Rock, NC 28726
P: 828-489-5080
E: mackenzieb0897@gmail.com