# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:23-cv-00270-MR-WCM

| | | |
|---|---|---|
| MACKENZIE ELAINE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| ROBERT JORDAN WARREN, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Partial Summary Judgment [Doc. 94].

## I.    PROCEDURAL BACKGROUND

This action arises from civil rights violations allegedly suffered by the Plaintiff after she engaged in speech critical of law enforcement.  On September 14, 2023, the Plaintiff Mackenzie Elaine Brown, proceeding *pro se*, filed a Complaint against the Henderson County Sheriff's Office, Robert Jordan Warren, Michael Scott Lindsay, Crystal D. Landers, Johnny E. Duncan, Jr., Bradley R. Reece, Brittany Nicole Maybin, Susan N. Oates, and Emily Greene Cowan.  [Doc. 1].  The Plaintiff filed an Amended Complaint on May 13, 2024, and the Defendants timely moved to dismiss.  [Docs. 37-

39]. On March 31, 2025, the Court accepted the Magistrate Judge's Memorandum and Recommendation and dismissed all but three of the Plaintiff's claims: (1) a First Amendment retaliation claim against Defendants Warren, Lindsay, Landers, Reece, and Maybin; (2) a Fourteenth Amendment equal protection claim against Defendants Warren, Lindsay, Landers, Reece, Maybin, and Duncan; and (3) a civil conspiracy claim against Defendants Warren, Lindsay, Landers, Reece, Maybin, and Duncan. [Doc. 58]. On April 1, 2025, the Defendants filed an Answer to the Amended Complaint. [Doc. 59]. On April 15, 2025, the Plaintiff filed a Motion for Certification of Interlocutory Appeal of the Court's March 31, 2025 Order, [Doc. 62], and the Court denied that motion on May 14, 2025, [Doc. 70].

On April 2, 2026, the Defendants filed the instant Motion for Partial Summary Judgment. [Doc. 94]. The Defendants' Motion requests summary judgment on all remaining claims except for the First Amendment retaliation claims against Defendants Warren, Lindsay, and Landers. [Id. at 1]. The Plaintiff filed a Response on May 8, 2026, [Doc. 102], and the Defendants filed a Reply on May 15, 2026, [Doc. 103]. On May 29, 2026, the Plaintiff moved to file a surreply, [Doc. 106], and the Defendants filed a Response in opposition to the Plaintiff's motion on June 1, 2026, [Doc. 107]. Having been fully briefed, this matter is now ripe for disposition.

2

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.  When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Id. at 255.  However, courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Eastern Shore Mkt. Inc. v. J.D. Assocs., LLP, 213 F.3d 175, 180 (4th Cir. 2000).

## III.    FACTUAL BACKGROUND

Viewing the forecast of evidence in the light most favorable to the Plaintiff, the following is a recitation of the relevant facts.

On October 1, 2021, the Plaintiff, accompanied by her friends Dan Pearson and Jennifer Seidman, parked in the Henderson County Sheriff's Office parking lot with the intention of filing assault charges against the father of her child in the Magistrate's Office next door.  [Doc. 102-2 at 7; Doc. 95-3

at 2-3]. In the parking lot, there was a Sheriff's Office patrol car that had been covered with removable pink film as part of a Sheriff's Office event. [Doc. 95-3 at 7]. The Sheriff's Office had invited the public to write on the pink patrol car with markers, and there were no visibly posted rules or restrictions regarding what could be written. [Doc. 102-2 at 8-9].

After the Plaintiff finished filing charges in the Magistrate's Office, she returned to the parking lot. [Doc. 95-3 at 4]. The Plaintiff joined Ms. Seidman in front of the pink patrol car to wait while Mr. Pearson finished a conversation with a police officer. [Id. at 4-5]. Ms. Seidman was drawing on the pink film on the patrol car while they waited, and she handed the Plaintiff a Sharpie. [Id. at 5]. The Plaintiff then used the Sharpie to write "12 SUX"[1] on the pink film. [Id. at 6]. When Mr. Pearson finished his conversation, the Plaintiff, Mr. Pearson, and Ms. Seidman drove away from the parking lot in the Plaintiff's vehicle. [Id. at 9].

Later that afternoon, Defendants Warren and Landers arrived at the Plaintiff's house to arrest her for damage to personal property. [Id. at 10-12]. Defendants Warren and Landers pulled the Plaintiff to the roadside, and

---

[1] The Plaintiff previously explained in a pleading in this matter that "'12' is slang terminology for law enforcement and 'SUX' is an abbreviation for the word SUCKS." [Doc. 1 at 10].

4

Defendant Warren took pictures of the Plaintiff standing handcuffed in front of the pink patrol car, which had been brought to the Plaintiff's residence. [Doc. 102-2 at 34-36; Doc. 102-3 at 2, 4]. Defendant Landers then drove the Plaintiff in the pink patrol car to the Henderson County Detention Center. [Doc. 102-3 at 2, 4]. The Plaintiff perceived the Defendants as physically aggressive and verbally abusive throughout this encounter. [Doc. 102-2 at 34-36; Doc. 95-3 at 14].

Once the Plaintiff arrived at the detention facility, the Plaintiff was taken to the booking area and served with a warrant for her arrest for injury to personal property amounting to a loss of $500, and her bond was set at $2000. [Doc. 95-3 at 15-18; Doc. 102-4 at 21, 28]. After her booking, the Plaintiff was moved to a cell, and she called Mr. Pearson and asked him to find a bail bond agent for her. [Doc. 95-3 at 19-20]. Soon after, Defendant Maybin told the Plaintiff that a bond company was on the way to assist the Plaintiff. [Doc. 102-2 at 39].

Approximately thirty minutes later, however, Defendant Maybin informed the Plaintiff that the bond company was "not going to come get [her] anymore because we told them what you wrote, and they respect us, so they don't want to come get you now." [Id.]. Mr. Pearson found three separate bond agents who were initially willing to assist the Plaintiff but withdrew that

5

assistance after calling the detention center and speaking to an officer. [Id. at 11-12]. Mr. Pearson "personally heard the officer from the jail tell the bail bond agent not to come get [the Plaintiff] because she had vandalized their car and did not deserve to get out of jail." [Id. at 12]. It was not until after 8:00 p.m., several hours after the Plaintiff arrived at the detention center, that the Plaintiff was released from custody with the assistance of a fourth bail bond agent. [Id.; Doc. 95-3 at 18]. While the Plaintiff had been detained, Defendant Duncan posted the pictures of the Plaintiff standing handcuffed in front of the pink patrol car on the Henderson County Sheriff's Office's Facebook page. [Doc. 102-3 at 3-4; Doc. 102-5 at 2-3]. The Facebook post also identified the Plaintiff by name, age, and town of residence, and stated that she had been arrested, transported in the pink patrol car, and charged with injury to personal property with bail set at $2000. [Doc. 102-5 at 2].

The next morning, Defendant Reece, an officer in the Henderson County Sheriff's Office Animal Enforcement Unit, conducted a dangerous dog inspection at the Plaintiff's home. [Doc. 95-4 at 2, 8]. The Plaintiff had been subject to such inspections since April 2019, and Defendant Reece had last inspected the Plaintiff on May 22, 2021. [Doc. 95-4 at 3-7]. The Plaintiff was home but did not answer Defendant Reece's knock on her door. [Id. at 12; Doc. 102-4 at 25]. Defendant Reece issued the Plaintiff a $550 fine:

6

$500 for interfering with the inspection by failing to answer her door, and $50 for lacking dangerous dog signs on two sides of her property. [Doc. 95-4 at 10-12; Doc. 102-4 at 24-25].

Several weeks later, the Plaintiff called the Animal Control office to request that the fine be withdrawn. [Doc. 102-2 at 24-25]. The Plaintiff's father was present for the call, and he heard an Animal Control officer tell the Plaintiff that the $550 fine could be dropped, but "instead they would mark it as Bella's (her dog) strike 2, and on strike 3, they would euthanize her." [Id. at 25]. The Plaintiff's father called Defendant Reece later that day, and Defendant Reece told him that the Plaintiff "would no longer owe animal enforcement the money, but that [the Plaintiff's dog] would be marked one step away from euthanization instead." [Id. at 25-26]. The Plaintiff did not pay the fine, and she subsequently learned that there is no "strike" system for dangerous dogs in Henderson County. [Doc. 106-1 at 3].

## IV.  DISCUSSION

The Defendants have moved for summary judgment on the First Amendment retaliation claims against Defendants Reece and Maybin, the Equal Protection claims against all Defendants, and the civil conspiracy claims against all Defendants. [Doc. 94 at 1].

## A.     First Amendment Retaliation Claims

"A plaintiff claiming First Amendment retaliation must demonstrate that: (1) [she] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [her] First Amendment rights, and (3) there was a causal relationship between [her] protected activity and the defendants' conduct."  Bhattacharya v. Murray, 93 F.4th 675, 687–88 (4th Cir. 2024) (internal quotation marks omitted).  Here, because the Defendants concede that the Plaintiff engaged in protected First Amendment activity when she wrote "12 SUX," only the adverse action and causation elements are at issue.  [Doc. 95 at 9].

"An adverse action for First Amendment purposes is one that may tend to chill individuals' exercise of constitutional rights."  Bhattacharya, 93 F.4th at 689 (internal quotation marks omitted).  "Not all retaliatory conduct tends to chill First Amendment activity, however, and a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a *de minimis* inconvenience to her exercise of First Amendment rights."  Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks and citations omitted).  "[W]here a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment,

sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 687 (4th Cir. 2000). By contrast, an arrest, seizure, or alteration of the conditions of an individual's detention may be sufficiently adverse to deter a person of ordinary firmness from exercising her First Amendment rights. See, e.g., Martin v. Duffy, 858 F.3d 239, 250 (4th Cir. 2017); Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013). Once a plaintiff has established the existence of an adverse action, the plaintiff must show that the defendant's retaliatory motive was a "but-for" cause of the plaintiff's injury, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." Nieves v. Bartlett, 587 U.S. 391, 399 (2019).

Here, regarding Defendant Reece, the Plaintiff forecasts evidence that, on the morning after the Plaintiff's arrest for writing "12 SUX," Defendant Reece conducted a dangerous dog inspection and issued the Plaintiff a $550 fine for interfering with the inspection by failing to answer her door and for failing to post dangerous dog signs on two sides of her property. [Doc. 102-2 at 45-48; Doc. 102-4 at 6]. The Plaintiff has also offered evidence that Defendant Reece subsequently agreed to withdraw the Plaintiff's fine but

implicitly threatened the Plaintiff's dog with an increased risk of euthanasia.[2]

[Id. at 24-26]. The Plaintiff does not dispute, however, that she had been subject to dangerous dog inspections since 2019, that she had not posted the two signs in question,[3] or that she was at home during the inspection but failed to answer her door. [Doc. 102 at 11-14]. Moreover, the Plaintiff concedes that she never paid the fine at issue and that there is no "strike system" for dangerous dogs in Henderson County. [Id. at 14-15; Doc. 106-1 at 3]. As a result, the plain language of the alleged implicit threat posed no imminent danger to her dog, and any such threat was, in fact, an empty one. Based on that forecast of evidence, taken in the light most favorable to the Plaintiff, no reasonable jury could find facts sufficient to establish the Plaintiff's First Amendment retaliation claim against Defendant Reece. Accordingly, the Court will grant summary judgment in favor of Defendant Reece as to the First Amendment retaliation claim against him.

As for Defendant Maybin, the Plaintiff's forecast of evidence includes testimony that Defendant Maybin told bail bond agents that the Plaintiff did

---

[2] Defendant Reece disputes the factual assertions regarding any implicit threat. [Doc. 102-2 at 50-52].

[3] The Plaintiff does dispute, however, that posting the two signs in question was necessary for compliance. [Doc. 102 at 12-13].

not deserve to get out of jail because of what the Plaintiff wrote on the police car, and that Defendant Maybin persuaded the bond agents not to assist the Plaintiff, resulting in the extension of the Plaintiff's detention.  [Doc. 102-2 at 11-12, 39]; see also [Doc. 37 at 13-14].  Based on that forecast of evidence, taken in the light most favorable to the Plaintiff, the Court concludes that a reasonable jury could find sufficient facts to establish each of the elements of the Plaintiff's First Amendment retaliation claim against Defendant Maybin.

The Defendants nevertheless contend that Defendant Maybin is entitled to qualified immunity on grounds that Maybin's conduct did not violate a clearly established right.  [Doc. 95 at 11-12].  "[Q]ualified immunity protects police officers from liability for 'bad guesses in gray areas' but permits aggrieved parties to seek damages from them when they 'transgress[ ] bright lines.'"  Hensley v. Suttles, 167 F. Supp. 3d 753, 761 (W.D.N.C. 2016) (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir.1992)).  Here, because the Court has already determined that the forecast of evidence is sufficient to sustain the Plaintiff's First Amendment retaliation claim against Maybin, the Court need only consider whether the First Amendment right at issue was "clearly established."  See Pearson v. Callahan, 555 U.S. 223, 227 (2009).

It has long been "clearly established" that "the First Amendment prohibits an officer from retaliating against an individual for speaking critically of the government." Trulock v. Freeh, 275 F.3d 391, 406 (4th Cir. 2001). The Fourth Circuit has held that the "bedrock First Amendment principle [ ] that citizens have a right to voice dissent from government polices" is a principle that "transcends forums," such that government officials cannot suppress or retaliate against an individual for "nondisruptive speech" even in a nonpublic forum by causing their seizure. Tobey, 706 F.3d at 391. Here, construing the facts in the light most favorable to the Plaintiff, Defendant Maybin's apparent attempt to extend the Plaintiff's detention in retaliation for the Plaintiff's nondisruptive speech is conduct that a reasonable officer would have clearly recognized as unlawful in the circumstances. See id.

Accordingly, the Court concludes that Defendant Maybin is not entitled to qualified immunity and will deny summary judgment as to the First Amendment retaliation claim against Defendant Maybin.

## B.   Fourteenth Amendment Equal Protection Claims

"Neither [the Fourth Circuit] nor the Supreme Court has recognized an equal protection right to be free from retaliation." Wilcox v. Lyons, 970 F.3d 452, 458 (4th Cir. 2020). Instead, the Fourth Circuit has "consistently considered retaliation claims brought under Section 1983 to be more

properly characterized as claims asserting a violation of the First Amendment." Id. When a plaintiff's "equal protection claim is best characterized as a mere rewording of his First Amendment retaliation claim," that claim may be dismissed because it "does not implicate the Equal Protection Clause." Martin, 858 F.3d at 252 (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 250 (4th Cir. 1999)).

Here, the Plaintiff's equal protection claims merely repackage her First Amendment retaliation claims. The Plaintiff alleged that the Defendants "used" or "contributed to the use of the unequal application of law . . . in retaliation for her protected speech." [Doc. 37 at 33]. At summary judgment, nothing in the Plaintiff's forecast of evidence provides a tenable alternative basis for her equal protection claims. Accordingly, the Court concludes that the Plaintiff's equal protection claims are duplicative of her First Amendment retaliation claims and will grant summary judgment in favor of all Defendants on those claims.[4]

---

[4] The First Amendment retaliation claim against Defendant Duncan was previously dismissed, [Doc. 59], and the Court has concluded supra that Defendant Reece is entitled to summary judgment on the First Amendment retaliation claim against him. Therefore, strictly speaking, the equal protection claims against Defendants Duncan and Reece fail not because they are duplicative of First Amendment retaliation claims, but rather because the failure of the First Amendment retaliation claims against them has revealed that there is no tenable predicate for equal protection claims against them either.

### C. Civil Conspiracy

To establish a civil conspiracy under § 1983, a plaintiff must show that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir. 1996). However, "[u]nder the intracorporate conspiracy doctrine, 'an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy.'" Bhattacharya, 93 F.4th at 699 (quoting Ziglar v. Abbasi, 582 U.S. 120, 137 (2017)). Moreover, a plaintiff cannot skirt the application of this doctrine merely by suing the defendants in their individual capacities. Buschi v. Kirven, 775 F.2d 1240, 1252 (4th Cir. 1985). Instead, a plaintiff may establish an exception to the doctrine by establishing that "an officer has an independent personal stake in achieving the corporation's illegal objective." Bhattacharya, 93 F.4th at 699 (internal quotation marks omitted).

Here, all six Defendants were employees of the Henderson County Sheriff's Department at the time of the events at issue, and, despite the Plaintiff's contentions to the contrary, there is no forecast of evidence that any of the Defendants had an independent personal stake in arresting or harassing the Plaintiff. See [Doc. 102 at 25]. Accordingly, the Court

concludes that the intracorporate-conspiracy doctrine bars the Plaintiff's civil conspiracy claims and will grant the Defendants' motion for summary judgment as to those claims.

### D. Motion for Leave to File Supplemental Brief

Finally, on May 29, 2026, two weeks after the Defendants filed a Reply in support of the instant motion for summary judgment, the Plaintiff moved for leave to file a supplemental brief in opposition to the Defendants' motion for summary judgment. [Doc. 106]. The Defendants filed a timely Response in opposition to the Plaintiff's motion. [Doc. 107]. Because the Court has considered the Plaintiff's proposed supplemental brief in ruling herein, the Court will grant the Plaintiff's motion.

## V. CONCLUSION

The Defendants' Motion for Partial Summary Judgment is granted as to the Plaintiff's Fourteenth Amendment equal protection claims and civil conspiracy claims against all Defendants, as well as to the First Amendment retaliation claim against Defendant Reece. The Defendants' Motion is denied as to the Plaintiff's First Amendment retaliation claim against Defendant Maybin, and the Court concludes that Defendant Maybin is not entitled to qualified immunity for that claim. This case shall proceed to trial on the Plaintiff's remaining First Amendment retaliation claims.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Partial Summary Judgment [Doc. 94] is hereby **GRANTED IN PART** and **DENIED IN PART**.  The Motion is **GRANTED** as to the First Amendment retaliation claim against Defendant Reece, the Equal Protection claims against all Defendants, and the Civil Conspiracy claims against all Defendants, and those claims are **DISMISSED WITH PREJUDICE**.  The Motion is **DENIED** as to the First Amendment retaliation claim against Defendant Maybin.  This case shall proceed to trial on the Plaintiff's First Amendment retaliation claims against Defendants Warren, Landers, Lindsay, and Maybin.

**IT IS SO ORDERED.**     Signed: June 13, 2026

Martin Reidinger
Chief United States District Judge

16